## FIELDEN POWER *et al.*
### *v.*
## REUBEN McCORD *et al.*

1. MECHANICS' LIEN — *contract to furnish labor and materials.* Where a contract is made to furnish materials for a building in process of erection, it is sufficient, although the ground upon which it is erected is not described. Where materials are furnished and placed in a building, if there is nothing showing a different intention, a jury would be warranted in finding, that they were furnished to be used in such building.

2. EVIDENCE — *interested witness.* A witness called by complainants, and who had filed a bill of interpleader, to share in the common fund, is not disqualified, as his interest is adverse to the party calling him.

3. CONFLICTING LIENS — *of various defendants and interpleaders.* The court should, in a case where complainants, a portion of the defendants and other parties having come in by interpleader, all claim a mechanics' or materialmen's lien, on the same property, ascertain and determine their several interests, and then render a decree fixing their rights, and order the payment of the sums due each, and in default of payment, order the sale of the property, and if none have a priority, decree a *pro rata* distribution of the funds, if it should prove insufficient for the satisfaction of all of the claims. In such a case, held that it is error to find the sum due one claimant, and render a decree for payment, or sale, without disposing of the claims of the other parties in the case.

4. JURY. It may be the better practice, to impanel a jury to find the amount due each claimant, as if they were separate proceedings — but where there are few claimants, and there is no complication, no objection is perceived to submitting all the claims to the same jury.

WRIT OF ERROR to the Circuit Court of Clinton county; the HON. SILAS L. BRYAN, Judge, presiding.

This was a petition, to enforce a mechanics' lien, filed by Reuben C. McCord, Charles W. McCord and George H. Garnett, against Fielden Power, William Morton, Wm. T. Power, John Brown, and a large number of other persons, to the August term, 1860, of the Clinton Circuit Court. The petition alleges, that Fielden Power and William Morton, about the first of September, 1859, being the owners, and in possession, of a certain tract of land, described by metes and bounds, jointly and at their own expense entered upon the erection of a brick building, and the necessary steam power for a flouring mill; that previous to that time, they had associated with them one Wisley Rippy as a partner.

That afterwards, on the 2nd day of September, 1859, Rippy, who was then a partner, entered into an agreement to purchase of petitioners a steam engine, complete in all its parts, together with other necessary fixtures, materials and machinery, for the purpose of being placed in the steam mill, on the land described in the petition. That Rippy agreed to pay, for the engine and fixtures, sixteen hundred dollars. That Rippy, about the first of October following, withdrew from the firm.

That Power, for the firm, about the first of October, 1859, made a further contract with petitioners for the necessary engine, castings and foundry work requisite for the mill then in process of erection on the land, which contract was for and embraced the same articles for which Rippy had contracted in writing; but this agreement was verbal; with the further understanding, that they were to be ready for delivery by the time the building was in a condition to receive them, which Power represented would be by the following January or February. That about the 7th of January, 1860, Power & Morton became desirous

of changing the contract, with respect to the size of the engine. And by agreement, the size of the engine was changed, from twelve to one of fourteen inches in diameter; to be furnished ready for delivery within two months; at an increase in the price, of $350.

That afterwards, on the 21st of January, 1860, Power & Morton purchased of petitioners, a doctor for the engine, at the price of $300, to be furnished in three months. At the same time Power & Morton contracted with petitioners to alter mill irons, at the usual rates, which they did to the amount of $105. That they then contracted for a large amount of castings and mill machinery, to be furnished for the erection of the mill, which petitioners allege was furnished according to the agreement. That the time for furnishing the materials was not extended beyond two years.

The petition alleges, that Power fraudulently conveyed his interest in the premises to Morton, on the 19th day of May, 1860; that Lorenzo P. Sanger, of whom Power & Morton had purchased the land, had not, nor had John Brown, to whom he had assigned the land for the benefit of creditors, of the firm of Sanger, Camp & Co., conveyed the premises to them.

The petition alleges, that George H. Eversal, James McLaird, George B. Judd, Elias A. Leeds, Frederick Schulenberg, Adolphus Bockeler, James M. Campbell, William H. Gray, Hamilton Power, and Lewis Morehouse, claim title to the land, or to have mechanics' liens thereon. They are made defendants to the petition; and there is a prayer for a summons; an answer under oath by defendants, Schulenberg & Bockeler, Eversal & McLaird, Judd & Leeds, Campbell & Morehouse, who filed their several answers, alleging that they, as mechanics or materialmen, had severally furnished labor and materials towards the erection of the building, under contracts, which were used for the purpose. They specify the amount, in their several answers, which they claim to be due them; and pray that their liens may be established, and that they be allowed to participate in the proceeds of the sale of the property when made.

George W. Haynie and Silas P. Wilcox, each filed a bill of

interpleader, claiming to have a lien on the premises, for labor and materials furnished under contract, to be used in the construction of the building, severally setting out the amount they claim to be due them; and pray that their lien may be established, and that they be permitted to share in the proceeds of the sale of the property when made.

Power & Morton answered the petition. They deny, that Sanger sold and conveyed the premises to them as alleged. They admit, that Sanger transferred the property to Brown as trustee, but deny that it was by the metes and bounds set out in the petition; they deny Rippy was a partner, and his authority to make the contract with petitioners, as set out in their bill: and deny that Rippy entered into the contract for an engine and machinery to be placed in the mill; and that in the contract no land was described. They deny, that they, through Power, on or about the first of October, 1859, made a further contract, in addition to that made by Rippy, but admit they adopted the kind of machinery agreed upon by Rippy and petitioners.

They admit, that they agreed with petitioners to purchase the identical articles mentioned in the memorandum made by Rippy, with the changes mentioned in the petition. They deny, that they authorized Eversal to contract for a larger engine, but charge that Power in person made the contract. They admit, the alteration of mill irons, but deny that is was worth the sum specified. They deny, that the articles were to be paid for as delivered; or that, by the terms of the contract, the premises were described upon which the articles were to be used. They admit, that the articles were delivered and received by them. They deny, that by the terms of the contract, it was to extend beyond two years; but charge that it depended upon the time when the building should be ready to receive the articles, and payment to be made within one year after they were delivered. To this answer a replication was filed.

They also filed an answer to the bill of interpleader filed in the case by Eversal & McLaird. They deny, that they made a contract with them, by which they were to commence.

14 — 36 ILL.

work and furnish materials on the 27th day of December, 1859, and to complete the contract on the 25th day of June, 1860 ; or that the same was to be paid for on the latter named day; but that it was to be paid during the process of the work. They deny, that all of the price for the labor and materials is unpaid. They answered the bill of interpleader filed by Haynie, and admit that he furnished the materials set out in his bill; but deny that it was to be paid for within two years, by the terms of the contract.

They also answered the bill of interpleader filed by Schulenberg & Bockeler, and admit that they delivered the materials as alleged in their bill ; but deny that by the contract it was agreed that they should be used in the erection of the building.

In their answer to the bill filed by Judd & Leeds, they deny that by the terms of the contract they were to use the material they furnished in the erection of the building. And to the bill of interpleader filed by Campbell & Morehouse, they adapt their answer to the original petition ; but admit that they furnished the materials as alleged in the bill of interpleader. To Wilcox's bill of interpleader they answer, and deny that they made with him such a contract as he alleges; or that they owe him $294.50, but charge that they only owe him $90.

Afterwards, John C. Martin, John W. Grayon and Wm. H. Benton filed a bill of interpleader, in which they allege that they, under a decree of the United States Circuit Court, for the southern district of Illinois, against Fielden Power, William Morton and others, became the purchasers of the property in controversy, and obtained a deed therefor, from the master in chancery of that court, and pray to be made parties, that they may the better protect their interests in the property. To this petition, complainants answered, admitting that Martin, Grayon and Benton had succeeded to the title of Power & Morton, in the premises in controversy.

The petition was taken as confessed against the other defendants, not answering. A trial was had by the court and a jury, resulting in a verdict in favor of petitioners, for the sum of $3,218.87, and the petitioners thereupon entered a *remittitur* for

$53.54, whereupon the defendants entered a motion for a new trial, which was overruled by the court; thereupon the court found and ordered, that petitioners have a lien on the premises described in the petition, for the sum thus found to be due, less the sum remitted. A decree was entered for the payment of the money in ninety days, and, in default thereof, that the clerk issue a special execution to the sheriff for the sale of the property, and that he execute a deed to the purchaser.

The case is brought to this court on a writ of error, and a reversal of the decree is sought: — because the court below refused to grant a new trial—in ordering a sale of the property, without disposing of the case, as to parties interpleading—in selling the title of all the defendants—in giving only ninety days to redeem.

Messrs. UNDERWOOD & NOETLING, for the Plaintiffs in Error.

Mr. H. K. S. O'MELVENY, for the Defendants in Error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a proceeding to enforce a mechanics' lien. A number of persons claiming similar liens on the same property, were made parties to the suit, and others filed bills of interpleader, claiming to hold liens for labor performed or materials furnished for the erection of the mill. On the hearing in the court below, a decree was rendered in favor of complainants in the original bill, declaring the existence of a lien on the property described in the bill, and awarding execution on default of payment within ninety days. It does not appear from the record in this case, that any disposition was made of the claims of the other parties asserting liens on the premises, and a right to share in the proceeds of the property when sold. For aught that appears from this record the cause may still be pending as to all of the parties except defendants in error, who were complainants in the original bill, whose claims were heard and a decree rendered as though no other claims had been asserted.

It is urged as a ground of reversal, that the contract for the materials furnished did not specify the lot of ground upon which they were to be placed.   The statute provides, that if any person shall contract with the owner of any piece of ground, to furnish labor or materials for erecting or repairing any building or appurtenance to any building on such land, he shall have a lien upon the whole tract of land upon which the erection is made.   The evidence shows that the machinery furnished by complainants was put upon this land, and that it was contracted for with the purpose of being used in the building being erected upon the same.   It was stated at the time the contract was made, that it was to be used in the building then being erected, and the proof shows that plaintiffs in error were not engaged in building any other mill.   From this evidence the jury could not have done otherwise than find that it was contracted for, to be placed in the building on the land in controversy.   But if it had only appeared that the machinery had been used in this mill, they might have inferred that it was purchased for that purpose.

It is again urged, that the court erred in permitting Eversal, who was a defendant, and had filed his bill of interpleader, to give testimony on the trial.   In chancery it is a rule, that the complainant may examine a defendant as a witness if not otherwise disqualified.   In this case there is nothing from which it appears that the witness had any disqualifying interest in the issue then being tried.   It is true that he may have had an interest in the fund, but if so, his interest was adverse to that of the complainants who called him.   He was claiming a lien on the same property, and if it was insufficient in value to pay all the liens, then his interest was to defeat the lien of complainants, and thereby increase the fund for the payment of his claim.   And the rule is well recognized, that a party may call a witness whose interest is adverse to that of the party calling him.   We are therefore of the opinion that his evidence was properly received.   But the answer being under oath his testimony would not overcome any denial in the answer responsive to the bill.   If there were such denials in the answer, it would

of course require the evidence of two witnesses, or one, and corroborating circumstances equal to another, to disprove them.

It is, however, manifest that the court below erred in failing to dispose of the claims of all the parties before the court. They were properly in court, and were asserting their claims. The pleadings were all made up, the issues formed, and the cause was ripe for a hearing, on the original bill, the interpleaders, the answers and replications. We are unable to perceive any reason why they should not all have been tried. The tenth section of the act creating the lien declares, that all persons interested in the subject-matter of the suit, or in the premises sought to be sold, may, on application, become parties at any time before final judgment. The twelfth section declares, that upon the trial of causes, under the provisions of that chapter, the court shall ascertain the amount due each creditor and shall direct the application of the proceeds of sales, to be made to each in proportion to their several amounts.

These provisions are peremptory, and the court on the trial must ascertain the sum due to each claimant before a decree is rendered directing the sale of the property, and the application of its proceeds to the claimants in proportion to the amount found due to each, if not sufficient to pay all of their claims. It may be, and perhaps is, the better practice to impanel a jury to pass upon and find the amount due each claimant, as though there were separate proceedings. But where there are but few parties and the claims are not complicated, no objection is perceived to submitting the whole case to the same jury. But a final decree, ordering the sale of the property, should not be rendered until the sum due each of the claimants is ascertained. Then their several rights should be declared in the decree, and the property sold, if payment is not made by the day fixed in the decree, to satisfy the sums due to the several claimants. In this case the decree was premature, and should not have been rendered until the sums due each claimant had been found. The decree must therefore be reversed, and the cause remanded, with directions to the court below to proceed and to try such other claims as have not already been disposed of, and ascertain

what is due to each claimant, and then to render a decree in conformity to the rules announced in this opinion. .

*Decree reversed.*