STEPHEN P. LUNT

*v.*

JOHN M. STEPHENS.

1. MECHANIC'S LIEN — *limitation, as to subsequent creditors.* Where the petition for a mechanic's lien is not filed within six months after the completion of the work, and the money for the labor and materials is due, the lien given by statute cannot prevail over the liens of intervening creditors, or the rights of others acquired by purchase under such intervening liens.

2. CONTRACT — *construed as to the number of buildings to be erected.* Under a contract, by which the contractor is to do all the mason, stone and brick work, and furnish the materials for a company in the erection of its works and appurtenances, no number of buildings being specified, and it not being known just what buildings the company would require, the contractor will have no right to insist upon the erection of any certain number of buildings, but only such as the company may elect to have erected.

3. SAME — *when buildings erected under such contract will be regarded as disconnected from those first built, in favor of intervening creditors.* Where,

under a contract to do all the labor and furnish all the materials of a certain kind for the erection of such buildings and appurtenances as the owner might require for certain purposes, the contractor did all the work he was required to do, or nearly so, on the buildings required to be erected, and settled for the same; and, after the Chicago fire, and a temporary suspension of the owner, growing out of the fire, he furnished labor and materials in the following year on other buildings connected with the first, but which could have been omitted, and then filed his petition to enforce his lien for the several sums due him, including that due in the first year, it was *held*, in favor of intervening creditors, who were sought to be postponed as to the whole of the contractor's claim, that the last work, etc., could not be held to be a continuation of the first, but rather as a new and independent undertaking.

4. MECHANIC'S LIEN — *the fact that a prior trust deed was upon an equitable estate will not postpone it to the mechanic's lien.* The fact that a company was the equitable owner, only, of land, and in procuring a loan had the party holding the legal title in trust for it, execute a deed of trust thereon to secure its repayment, will not affect the lien acquired under such deed, and postpone the same in favor of a subsequent lien obtained under the statute in favor of one performing labor and furnishing materials for the erection of buildings thereon, and give the latter precedence.

5. SAME — *final decree should settle the rights of the several creditors according to their priorities.* Where, in a proceeding to enforce a mechanic's lien, prior rights are set up under mortgages and deeds of trust, and judgment creditors interplead after verdict, it is error to render a final decree on the verdict in favor of the petitioner without first ascertaining and determining the interests of all the parties. This should first be done, and the decree of sale should direct the mode of distribution of the proceeds according to the priorities of the several claimants.

6. SAME — *when party claiming prior lien, not bound to contest petitioner's claim before the jury.* In a suit to enforce a mechanic's lien, where the only issue submitted to the jury is the right of the petitioner to a lien, and the amount due him, defendants, who set up prior liens, need not appear before the jury and contest the petitioner's rights, as the question of priority of liens is not before the jury, and their verdict will not settle that question.

7. CHANCERY PRACTICE — *new party acquiring interest pendente lite.* Where a party, *pendente lite*, takes an assignment of the interest of one of the parties to the suit, he may, if he pleases, make himself a party to the suit by a supplemental bill, but he cannot, by petition, pray to be admitted to take a part as a party defendant.

8. Where a person acquires the interest of a defendant in a suit to enforce a mechanic's lien, during the pendency of the suit, and by amended

petition he is made a defendant, his position will be precisely that of his assignor, and no reason is perceived why he cannot avail of the answer of his assignor previously filed.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

This was a petition for a mechanic's lien, filed by John W. Stephens, against the Balback Smelting and Refining Company, Robert H. Walker, John Baldwin, Jr., and Lawson S. Warner. Subsequently, the petition was amended, by making Stephen P. Lunt a party defendant. The opinion of the court contains a substantial statement of the leading facts of the case.

Messrs. SLEEPER & WHITON, for the appellant.

Messrs. NICHOLES, McKINDLEY & MORRISON, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was a proceeding instituted under the mechanics' lien law. A brief history of the case will be necessary to a clear understanding of the questions of law raised. Petitioner claims, the acting and managing officers of the Balback Smelting and Refining Company, a corporation existing under the laws of this State, on the 10th day of August, 1871, employed him to do all the work, and furnish all the materials for the erection and completion of the mason, stone and brick work on the premises in question, for the erection of its smelting and refining works, and the appurtenances thereto, in consideration of which the company agreed to pay him ten dollars per thousand for brick in the wall, and for all other materials furnished and work done as much as the same should be reasonably worth. Petitioner further alleges, that, in pursuance of that agreement, he did all the work, and furnished all the materials required of him by the company, in the construction of its works, and the appurtenances thereto, upon the grounds described; that he fully completed the same by the 10th day of July, 1872,

and on that day he had an accounting with the company, and there was found due him, for work done and materials furnished, after allowing all payments, $2,768.25, which he insists is still due and unpaid, and that he is entitled to interest thereon.

Previous to August 1st, 1871, Lawson S. Warner and one Davenport owned the premises in equal shares, with the title in Warner's name; and about that day they sold the same, by verbal contract, to the company, for the sum of $13,260, and agreed to take their pay in the stock of the company, at twenty cents on the dollar, leaving the legal title of the premises in Warner, for the sake of convenience, where it remained up to the 23d day of December, 1871, when he, together with his wife, at the request and by the direction of the company, gave a trust deed on the premises to John Baldwin, Jr., to secure Robert H. Walker in a loan of $10,000 to the company, it being understood by all the parties at the time, the land belonged to the company, and the loan was for its benefit.

On the 1st day of November, 1872, Baldwin, as trustee, by virtue of the power contained in the trust deed, sold the premises, and the same were bid in under the direction and for the benefit of appellant, for enough to pay the debt secured by the trust-deed, with the accrued interest and expenses of sale, he furnishing the money and shortly after receiving a deed of the premises, and now claims title under that sale. This suit was commenced previous to that sale, and all parties interested, including Lunt, had notice of its pendency, and that appellee claimed a mechanic's lien upon the premises.

Baldwin and Walker, who were made defendants to the original bill, filed a joint answer, in which they set up prior liens on the premises; one, a mortgage, bearing date May 25, 1871, made by Warner to Giles Hubbard and Lewis Stone, to secure them in the sum of $4,700; and another, a trust deed, of date June 1, 1871, made by Warner to John Baldwin, Jr., to secure Robert H. Walker in the sum of $1,000; both being prior to the trust deed of December 23, 1871, to secure Walker

in the sum of $10,000, under which Lunt acquired title. By an amendment to the petition, Lunt was made a defendant.

The two propositions contained in the answers, upon which the defense seems to be rested, are: First — Whatever labor and materials were furnished the company, prior to November, 1871, were on work that was entirely completed prior to the fire that occurred on the 9th of October of that year. Second—The petition herein not having been filed within six months from that date, the lien sought to be established cannot prevail against appellant's rights acquired under the sale made on the 1st day of December, 1872, by virtue of the deed of trust of the date of December 23, 1871. If the first proposition be established, the latter is but a sequence from the bar created by the statute in favor of creditors.

The position of petitioner is, that the labor performed and materials furnished the Balback Company, in the construction of its works, during the years 1871 and 1872, were upon a single undertaking, which was only temporarily suspended by the prostration in business that followed the disastrous fire of October, 1871. The testimony is of that character that leaves it in serious doubt whether this theory of the case can be maintained, notwithstanding there has been a verdict in petitioner's favor. We are not inclined to attach much importance to the verdict, for the reason, the whole case, with all its complications, seems to have been submitted to the jury under instructions, some of which were much more calculated to mislead than assist the jury in arriving at a proper conclusion. The verdict is general, finding the issues for petitioner, and also the whole amount of indebtedness of the Balback Company to him. What issues were submitted, we are unable to learn from this record. There is no finding on the more important inquiry, whether the labor performed and the materials furnished before and after the fire were under the same contract, so as to take the entire claim out of the bar of the statute, in favor of *bona fide* creditors.

But, regarding the verdict as finding that fact in favor of petitioner, in view of the evidence, and the erroneous character of some of the instructions, it ought not to be permitted to stand.

Petitioner insists he was to do all the mason, stone and brick work, and furnish the materials for the Balback Company in the erection of its works, and the appurtenances. Giving credence to his entire testimony, it hardly supports the view it is claimed the jury took of the case. His own testimony is to the effect, it was not known, when he entered upon the work, just what buildings would be required. That was in the discretion of the company. Petitioner does not claim he was employed to construct any particular number of buildings, but to do all the labor and furnish all the materials the company should require in the construction of its buildings. The most favorable construction of the contract, as he alleges it, is, that he was to do all the labor and furnish all the materials for the erection of such buildings, and appurtenances, as the company, from time to time, should elect to have erected. Accordingly, in 1871 he was employed to erect certain buildings for the use of the company. That work, by all the testimony, had been nearly, or quite, completed before the fire. Warner, the secretary of the company, says they had a settlement with petitioner of every thing up to October, except, perhaps, a few thousand bricks on the ground that had not been used. Petitioner denies any settlement had been made, but the witness, Warner, is greatly strengthened in his testimony by the fact he had the original accounts rendered, and the record of them in his books, which were saved from the fire, as well as by other evidence equally convincing. The whole enterprise had been abandoned for the time being, in consequence of the general suspension of business. A period of more than six months elapsed before the company was enabled to resume work. The work petitioner was requested to do in April, 1872, had no necessary connection with that of the year previous. It was upon

improvements the company could make or omit, at its election. The evidence affords much stronger reasons for regarding it as a new undertaking than as a continuation of the former contract.

The ninth instruction in the series given in behalf of the petitioner stated a proposition that was highly calculated to produce a wrong conclusion from the evidence. The jury were told, if they believed, from the evidence, the trust deed made by Warner to Baldwin, dated December 23, 1871, though executed individually by Warner, was essentially a transaction of the Balback Company, the money loaned, obtained for the company with the knowledge and consent of all parties that the company was the equitable owner of the property, and was in possession under contract of sale, then they would find the property in the Balback Company, and disregard the trust deed in finding the extent of property covered by lien of petitioner — if they find a lien — under the evidence. This presents a mistaken view of the law. How the fact the company was the equitable owner of the land could affect the lien created by the deed of trust in favor of the creditors holding under it, we cannot understand. It may be conceded it was, in effect, the deed of the Balback Company. Still, it had the clear right to mortgage its equitable interest in the property to secure *bona fide* indebtedness. Having done so, it created a lien that would prevail over all junior liens, so far as its interest in the estate itself was concerned. If the jury understood this instruction as we do, it may have produced a verdict, notwithstanding the weight of the evidence may have been against the proposition asserted, that the labor performed and the materials furnished the second year were done and furnished under the undertaking of the previous year.

After verdict, certain intervening creditors, by leave of court, filed petitions to have their claims against the Balback Company made liens upon the property. Although issues were formed, no disposition seems to have been made of these claims before the final disposition of the cause. A motion for a new

trial having been overruled, and before final decree, a motion was made that, by reference to a master, or otherwise, the court would ascertain and determine the several interests of all the parties concerned, and by its decree direct the mode of distribution of the proceeds of the sale of the premises, according to the priorities of the several claimants. This motion ought to have been allowed. The practice in this class of cases has been definitely settled by the former decisions of this court. *Power et al.* v. *McCord et al.* 36 Ill. 214; *Martin* v. *Eversal et al.* ib. 222; *Crosky et al.* v. *Corey et al.* 48 ib. 442; *Crosky et al.* v. *N. W. Manufacturing Co.* ib. 481; *Tracy* v. *Rogers,* 69 ib. 662.

No disposition had been made of the rights of the intervening creditors, whatever they may have been. Liens created by the mortgages of May and June, 1871, in favor of Walker and others, previous to any labor done or materials furnished by petitioner, were insisted upon as entitled to priority, and the court was asked to determine their validity, as well as the lien created by the deed of trust of December 23, 1871. This the court neglected to do, and the omission was error.

It is said, neither Walker nor Baldwin appeared at the trial before the jury to contest the claim of petitioner. There was no necessity for an appearance by them. The validity of the prior liens had not been submitted by any issue that had been formed. Another answer is, they had previously assigned all their interest in those claims to the defendant, Lunt. But it is said he has not set up his equitable ownership in his answer, and for that reason he cannot be heard to insist upon the prior liens created by the several mortgages or deeds of trust. The rule, as stated by Mr. Daniell, in his work on Chancery Practice, is, where a person, *pendente lite,* takes an assignment of the interest of one of the parties to the suit, he may, if he pleases, make himself a party to the suit by a supplemental bill, but he cannot, by petition, pray to be admitted to take a part as a party defendant. Dan. Chy. Pr., p. 328.

In this case, petitioner having made the assignee a party by an amended bill, his position is precisely that of the assignor, and no reason is perceived why he could not avail of the answer of the assignor, previously filed, and defend in his name. But, if this were not so, defendant, Lunt, even after the master's report, by leave of the court, if found necessary, could amend his answer so as to conform to the evidence.

A further objection insisted upon is, that the proof shows these prior mortgages have been discharged. Appellant ought to have the right to contest the fact of payment. He was denied that privilege before the jury, perhaps rightfully, for the reason that issue had been in no appropriate manner submitted to them. Nevertheless, he was entitled to have that question passed upon before final decree, and it was error in the court to deny him the privilege.

By the twentieth section of the act of 1845, which is the same as the present statute, no incumbrance created before the making of the contract shall operate on the building erected, or materials furnished, until the lien in favor of the person doing the work or furnishing the materials has been satisfied; and upon all questions arising between previous incumbrances and creditors, the previous incumbrance shall be preferred, to the extent of the value of the land at the time of making the contract. It is made the duty of the court to ascertain, by jury or otherwise, what proportion of any sale shall be paid to the several parties in interest. R. S. 1874, p. 667, sec. 17.

This the court wholly failed to do in the case at bar. The decree directs the sale of the property for the entire amount found due the petitioner, without reference to the rights of Lunt acquired under the deed of trust of December 23, 1871, and without adjudicating the question of previous liens under the other mortgages. No steps were taken, as required by law, to ascertain what portion of the proceeds of the sale, if any, should be paid to the respective parties. In this respect the decree is clearly erroneous. *Tracy* v. *Rogers, supra.*

By reference to a master, or other appropriate mode, the court ought to have ascertained and determined the several interests of all the parties before rendering final decree, in accordance with the practice established by the previous decisions of this court. *Power* v. *McCord, supra.*

Because this was not done, the decree will be reversed and the cause remanded.

*Decree reversed.*