## FREELAND B. GARDNER ET AL.
### V.
### JAMES C. WATSON ET AL.

1. EQUITY—LIMITATION.—Courts of equity follow the law in allowing the defense of the Statute of Limitations, and so long as there is no bar at law there is none in equity.

2. MECHANIC'S LIEN—LIMITATION.—Section 28 of the statute relating to mechanics' liens, as it stood prior to the amendment of 1879, providing that suit must be brought within six months after the last payment was due, etc., in order to charge any other creditor or incumbrancer could not be extended by implication, so as to embrace or protect a purchaser of the property sought to be charged with the lien.

3. SAME—SAME PARTIES.—It is well settled that where a suit is brought to enforce a mechanic's lien against the owner, and upon amendment of the petition, a creditor or incumbrancer is made a party defendant, the suit will not be considered as having been commenced against such creditor or incumbrancer until he is so made a party defendant.

4. LIS PENDENS.—For a *lis pendens* to affect a purchaser, there must be something in the pleadings at the date of the purchase to point his attention to the property purchased as the identical property in litigation.

5. LANDLORD AND TENANT—IMPROVEMENTS.—The right of a tenant to receive payment from the landlord at the expiration of the tenancy, for fixtures placed on the demised premises during the term, arises from no rule of law or legal duty growing out of the relation of landlord and tenant, but is always a matter of express contract, in the absence of which, the fixtures become the property of the landlord at the end of the lease.

6. SAME.—Such a contract, when not in any way made binding upon the assigns of the covenantors, is a mere personal covenant of the lessor, not running with the land so as to be binding upon his grantee, and gives no lien upon the premises capable of being enforced against the grantees of the original lessor, or any interest *in rem*. to which a mechanic's lien could attach.

. APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding. Opinion filed February 23, 1886.

On the 26th day of November, 1873, James C. Watson and William H. Morrell, the appellees, filed their petition against Freeland B. Gardner and Edward, Benjamin, George, William R., and Ann H. Manierre, for a mechanic's lien. The petition alleged, in substance, that said Gardner owned and held a leasehold interest in lot one, block eight, in fractional section fifteen, addition to Chicago, under a lease to him from the other defendants, who were the owners of the fee, for a term of ten years from November, 1871; that between July 1, 1873, and November 20, 1873, the petitioners, at the request of said Gardner, set the engine and furnished pipe and fittings and the necessary labor and materials, in altering and repairing the steam heating apparatus, in the building standing on the premises; that the price and value of said labor and materials was $2,979.40, which said Gardner approved and promised to pay, and that of said sum $2,174.03 remained unpaid, and constituted a valid and first lien upon said leasehold estate. The petition prayed for a decree declaring and establishing such lien, and awarding a sale of said leasehold estate for the satisfaction of the same.

February 14, 1874, Gardner appeared and answered, admitting that he leased said lot as charged in the petition, and erected on that and adjoining lots a hotel building known as the Gardner House, but denied that he employed the petitioners to do the work or furnish the materials in question, or ever undertook or promised to pay them therefor. Said answer also alleged that, prior to the furnishing of said work and materials, said defendant had leased said hotel to Fred S. Gould and H. H. Gardner, and that at the time said indebtedness accrued, said Gould owned the lease and was in sole charge of said hotel as lessee, and that he alone contracted with the petitioner for said labor and materials, and alone promised to pay them therefor; that said Gould asked the defendant to have certain repairs done, the petitioners having proposed to

said Gould to do the same for $500 or about that sum, and that thereupon the defendant authorized said Gould to expend upon said repairs $500 or thereabouts of the rents coming due the defendant, offering to deduct the same from said rent, which was all the authority given by the defendant to said Gould or the petitioners in the premises; that said Gould then owed and has ever since owed the defendant an amount of rent exceeding the whole sum claimed by the petitioners, and that while the defendant did not authorize said Gould to expend so much, he is willing that they should collect the same of Gould, in which case he will deduct the same from the rent then and still due him.

The defendants Manierre did not appear, nor were they served with process, nor does the record furnish any evidence that any summons was ever issued to them, or any steps taken by the petitioners to bring them into court.

April 19, 1875, on motion of the petitioners, the cause was referred to the master to take proofs, and with the exception of certain depositions taken before the master May 1, 1875, and February 17, 1876, and one deposition taken June 9, 1875, in New York, before a commissioner, no further steps were taken in the case until May 7, 1880, at which date the petitioners filed their replication to the answer of Gardner. On the following day an order was entered, on their motion, setting the cause for hearing at the May term, 1880, of the cour', but nothing further was done until May 5, 1881, at which date leave was granted the petitioners to amend their petition by making Ahira Cobb and Alva Bradley parties defendant.

Cobb and Bradley afterward answered, alleging that on the 30th day of March, 1881, they became the owners in fee of the premises described in the petition, through various mesne conveyances from the Manierres, and still own the same. They admit the execution of the lease from the Manierres to Gardner, but allege that on the 1st day of November, 1881, the term of said lease expired, and that all the estate or interest upon which the petitioners claim a lien then terminated and ceased to exist. They also allege that they did not become parties to the petition until more than six months after any

amount which may have been owing from Gardner to the petitioners for labor or materials became due, and that the petitioners' lien, if they ever had one, was extinguished.

On the 15th day of November, 1881, the petitioners amended their petition by alleging that the lease to Gardner contained a covenant providing for an appraisal of the value of the demised premises at the expiration of the first five years of the term, as a basis upon which to compute the rent for the following five years, after which the lease provided as follows :

" And in case said parties can not agree for an extension of this lease at the end of said term of ten years, then the buildings and improvements which shall have been erected and made on said premises by the party of the second part, shall be appraised in the same manner as is agreed upon above for the valuation of said premises at the end of five years from this date, and shall be paid for by said party of the first part within sixty days after notice that such appraisement has been concluded."

By said amendment the petitioners also alleged that on January 15, 1872, said Gardner purchased the north half of lot four in said block eight, and afterward built on said lot one and said north half of lot four, said building known as the Gardner House; that the labor and materials in question were furnished by the petitioners at the request of Gardner, in making repairs on said building, and that they thereby acquired a valid and first lien upon said building, and upon the fee of the north half of lot four, and upon the purchase price of that part of said building which stands on said lot one.   The prayer of the petition was also amended so as to pray for a sale of the building, and also of the north half of lot four, and of the right to obtain payment for the value of the building at the termination of the lease.

Defendant Cobb having died, his widow and heirs at law were made parties defendant, and thereupon they, as well as said defendant Bradley, filed their plea and also an answer to the amended petition, setting up in bar of said petition the limitation provided in section twenty-eight of the statute in re-

lation to mechanics' liens, and also the five years Statute of Lim_itation, and also alleged in their answer, among other things, that on the 15th day of January, 1872, said Gardner, being the owner in fee of said north half of lot. four, executed to one Balcom, as trustee, a trust deed conveying the same to him to secure an indebtedness of $30,000, and that on the 10th day of March, 1874, he executed a second trust deed to one White, as trustee, conveying said north half of lot four, and all of said Gardner's right, title and interest in said lot one, to secure two promissory notes amounting to $60,000; that afterward, on the 6th day of April, 1877, the last mentioned trust deed was forc-closed and said premises sold and conveyed by the trustee to one Goodrich, and that on the 3rd day of March, 1881, said Goodrich sold and conveyed the same to said Cobb and Brad-ley, whereby they became the owners of all of said premises, and all rights appertaining thereto, mentioned in the petition; that after said trustee's sale, said Goodrich paid off said trust deed to Balcom, and thereby became subrogated to the rights of the holder of that security; that the right to receive pay_ment for said building now belongs to the defendants, and that it was through the laches of the petitioners in failing to pros-ecute their petition with diligence, that their suit was not brought to trial long before the termination of said leasehold estate.

By further amendment to the petition it was alleged, that the part of the Gardner House situated on lot one exceeded $20,000 in value, and that no steps had been taken under the lease to appraise or pay the value thereof.

At the hearing, which was had on the pleadings and proofs, it was shown that the Manierres, being the owners in fee of lot one, executed to said Gardner the lease described in the peti-tion; that said Gardner acquired the title in fee of the north half of lot four as stated in the pleadings, and that he subse-quently erected on said lot and half lot the building known as the Gardner House; that the petitioners furnished labor and materials in making repairs on said building as alleged in the petition, for which there was due them at the date of the hear-ing, including interest, the sum of $3,619.76, but whether the

Gardner v. Watson.

same were furnished at the request of said Gardner or of said Gould, and whether Gardner afterward undertook and promised to pay for the same, the evidence was conflicting.

The evidence also showed the execution by Gardner of the trust deed to Balcom, for $30,000, on the north half of lot four, and of the trust deed to White for $60,000 on said north half of lot four and Gardner's interest in lot one, and the subsequent foreclosure of the last mentioned trust deed, and the sale and conveyance of both lots by the trustee to Goodrich, as alleged in the answer. It was also admitted that, by a warranty deed dated September 12, 1874, Gardner conveyed to Goodrich the north half of lot four and the leasehold interest in lot one, and that Goodrich afterward paid the debt secured by the deed of trust to Balcom; also, that by deed dated July 31, 1880, the Manierres conveyed said lot one to Goodrich, and it was proved that by deed dated March 30, 1881, Goodrich conveyed lot one and the north half of lot four to Cobb and Bradley.

The court found that the petitioners, at the time alleged in the petition, furnished said labor and materials in making repairs on said building at the request of said Gardner and that Gardner afterward promised to pay for the same, and that the petitioners are entitled to a lien on said premises therefor; that said Goodrich purchased said property *pendente lite* and subject to said lien; and it was decreed that the petitioners have a valid and first lien on said lots and building for $3,619.26, and that the right and titles of all the defendants are subject thereto, and that unless the same be paid within thirty days the master make sale of said premises, or so much thereof as should be necessary, and apply the proceeds to the satisfaction of said lien and costs. From this decree the defendants have appealed to this court.

Messrs. Cook & Upton, for appellants; that, if during the pendency of a suit in chancery, any new matter is set up by the complainant the defendant may insist upon the benefit of the Statute of Limitations until the time when the new claim is presented, cited Angell on Limitations, 346, note 3, 6th Ed.;

Dudley v. Price, 10 B. Monroe, 84; Christmas v. Mitchell, 3 Ired. (N. C.) 535; Miller v. McIntyre, 6 Peters, U. S. 61.

The principle of *lis pendens* is that the specific property must be so pointed out by the proceedings as to warn the whole world that they meddle with it at their peril, and it is notice only in relation to the property which is the immediate subject of the suit: Lewis v. Mew, 1 Strobhart's Eq. Rep. 180; Edmunds v. Cranshaw, 1 McCord's Ch. Rep. 264; Bouvier's Law Dictionary, Vol. 2, p. 76.

Mr. JOHN WOODBRIDGE, for appellees.

BAILEY, P. J. The defendants having pleaded in bar the limitation provided by section fifteen of the Statute of Limitations, and also that provided by section twenty-eight of the statute in relation to mechanics' liens, the question is presented whether the case made by the pleadings and proof is one to which either of those statutes applies.

We are inclined to the opinion that the petitioners are not barred of their lien under the provisions of the general Statute of Limitations. So far as that statute is concerned, the right to enforce the lien would seem to continue until the debt itself is barred. Courts of equity follow the law in allowing the defense of the Statute of Limitations, and so long as there is no bar at law there is none in equity. It is clear that the debt is not barred, as the present suit was brought against the principal debtor within less than five years from the time the debt became due and payable. In point of fact it was brought within less than one month from the time the debt became due, and was pending continuously down to the date of the decree. The filing of the petition against Gardner arrested the running of the statute as against the debt.

But the provisions of section 28 of the statute in relation to mechanics' liens present questions of greater difficulty. That section, as it stood prior to the amendment of 1879, provided that mechanics' liens should not be enforced as against or to the prejudice of any other creditor or incumbrance, unless suit should be instituted to enforce such lien within six months

Gardner v. Watson.

after the last payment for labor or materials should have become due and payable. This limitation, as held in Dunphy v. Riddle, 86 Ill. 22, can not be extended by implication so as to embrace or protect a purchaser of the property sought to be charged with the lien, and the amendment of 1879, passed several years after the rights of the petitioners had accrued and after their petition had been filed, extending the same limitation to purchasers, can not, we think, be held to affect the rights of the parties to this suit.

The petition was filed November 26, 1873, but as then framed it sought to enforce a lien only on Gardner's leasehold interest in lot one and the building erected thereon. No allusion was made in the petition in any form to lot four, but the allegation was merely that Gardner held a leasehold interest in lot one, and that the petitioner, at the request of Gardner, furnished the materials and labor in making certain repairs upon the building standing thereon, and the petition prayed merely for a lien upon and a sale of such leasehold interest. Such was the entire scope of the petition until November 15, 1881, at which time it was so amended as to be made to apply to the north half of lot four.

The evidence discloses two incumbrances on the property executed by Gardner, the first being the trust deed for $30,000 to Balcom, dated January 15, 1872, conveying the north half of lot four, and the second being the trust deed for $60,000 to White, dated March 10, 1874, conveying the north half of lot four and the leasehold interest in lot one. The White trust deed was foreclosed April 6, 1877, and on such foreclosure all the property conveyed by that instrument was sold and conveyed by the trustee to Goodrich, who afterward conveyed the same to Cobb and Bradley, Goodrich having in the meantime, in order to protect his title, paid off the Balcom trust deed. It is clear then that Goodrich, as well as his grantees, Cobb and Bradley, so far as they took title through the foreclosure of the White trust deed, or are entitled to be subrogated to the Balcom trust deed, occupy the relation of creditors and incumbrances, and are to be protected as such.

It is well settled that where a suit is brought to enforce a

mechanic's lien against the owner, and upon amendment of the petition a creditor or incumbrancer is made a party defendant, the suit will not be considered as having been commenced against such creditor or incumbrancer until he is so made a party defendant. Dunphy v. Riddle, *supra;* Clark v. Manning, 4 Bradwell, 649 ; Bayard v. McGraw, 1 Id. 134; McGraw v. Bayard, 96 Ill. 146. The Balcom trust deed was executed before the petitioners' lien accrued, and neither the trust deed nor the party secured was made a party to the suit within the six months limited by the statute. That security, then, is unaffected by this proceeding, and whatever rights Goodrich may have acquired by paying it off, must be held to be still superior to the petitioners' lien. Having been compelled, in order to protect the title which he had purchased, to pay off the incumbrance, we think that, upon well recognized principles of equity, he is entitled, as against the petitioners, to be subrogated thereto, and that the same right is now held by his grantees. Lunt v. Stephens, 75 Ill. 507.

The other trust deed was executed after the original petition was filed, and therefore, as to all property within the scope of the petition, it must be regarded as a conveyance *pendente lite.* But the petition, as has already been remarked, did not then embrace the north half of lot four, and had no reference to that lot. It can not be regarded, then, as constituting at that time a suit instituted to enforce a lien on that lot, within the meaning of said twenty-eighth section.

We can not adopt the view suggested by counsel for the appellees, that so long as the building was in fact situated partly on lot one and partly on the north half of lot four, the averment in the petition that the repairs were made in the building, brought lot four within the scope of the petition, although no mention was made of that lot. There was no averment that any part of the repairs were made in that portion of the building situated on that lot, but the averment is, on the contrary, that they were made in a building situated on the premises described, viz., lot one.

The petition certainly should have contained averments sufficient to constitute it a *lis pendens* as to the north half of lot

Gardner v. Watson.

four.    As held in Lewis v. Mew, 1 Strob. Eq., 180, for a *lis pendens* to affect a purchaser, there must be something in the pleadings, at the date of the purchase, to point his attention to the property purchased, as the identical property in litigation.    In Miller v. Sherry, 2 Wal. 237, it is held that a creditor's bill, to be a *lis pendens*, and to operate as a notice against real estate, must be so definite in the description of the estate, as that any one reading it can learn thereby what property is the subject of the litigation.    The same rule substantially is laid down in Griffeth v. Griffeth, 9 Paige, 315; and in Edmunds v. Crenshaw, 1 McCord's Ch. 252.

Here the petition made no mention of lot four, and contained no suggestion showing either directly or inferentially that the repairs in question or any portion of them were made on that lot, and it prayed merely to have a lien established on the defendant's leasehold interest in lot one.    How could any one reading it have learned or been .led to suspect that lot four was in any sense the subject of the litigation? So far as that lot is concerned, it is manifest that the suit must be regarded as having been commenced November 1, 1881, the date of filing the amendment to the petition.

As to lot four, then, the limitation prescribed by section twenty-eight of the mechanic's lien law applies, and the petitioners' lien must be held to be subject to the White trust deed.    By the foreclosure of that security their lien, so far as it affected that lot, was cut off and wiped out, and became incapable of subsequent enforcement.

How stands their right to a lien as respects lot one ?    At the time of the decree the term of Gardner's lease of that lot had expired, and the lien, so far as it is attached to the term demised to the lessee, necessarily expired with it.    It is now sought to extend the lien upon the fund arising under the covenant in the lease, which provides for the payment by the lessor to the lessee at the expiration of the lease, of the appraised value of the buildings and improvements placed on the lot by the tenant during his tenancy.

The statute provides that the lien thereby created shall extend to an estate in fee, for life, for years, or any other estate,

or right of redemption, or any other interest which the owner may have in the lot or land at the time of making the contract. The only question is, whether the right secured to the tenant by the covenant in the lease to receive payment from his lessors for the buildings, etc., at the expiration of the tenancy, was an interest in the lot, within the meaning of the statute.

The right of a tenant to receive payment from the landlord, at the expiration of the tenancy, for fixtures placed on the demised premises during the term, arises from no rule of law or legal duty growing out of the relation of landlord and tenant. It is always a matter of express contract, and in the absence of such contract, the fixtures, at the expiration of the term, become, by operation of law, the property of the landlord without payment. We have then to look solely to the terms of the covenant in the lease to determine the rights of the parties in this case.

It should be observed that the covenant is merely that the appraised value of the buildings, etc., "shall be paid for by said party of the first part," but no mention is made of their assigns, nor is the covenant in any way made binding upon the assigns of the covenantors. In Hansen v. Meyer, 81 Ill. 321, a lease contained a clause binding the lessor to pay for certain fixtures and furniture not then *in esse*, but which the lessee was to put into the building demised, but there was no provision that the covenant should be binding upon the assigns of the lessor, and it was held, on the authority of Spencer's Case, 5 Coke, 16, that the grantee of the lessor was not liable to the lessee on the covenant, and could not be compelled to pay him for such furniture and fixtures. The covenant was there treated as the mere personal covenant of the lessor, and not running with the land so as to be binding upon his grantee.

We are unable to see how, in the light of the foregoing authorities, or upon any recognized principle of law, the covenant can be held to have given to Gardner any interest in the land itself. He doubtless would have had his action against the Manierres, his lessors, for the value of his improvements,

Gardner v. Watson.

but that gave him no lien upon the premises capable of being enforced against the grantees of the Manierres, or any interest *in rem* to which a mechanic's lien could attach.

The petitioners' lien having expired with the leasehold estate, and they being unable to take anything by virtue of the covenant in the lease, they had no right to be decreed a lien as respects lot one, and their lien upon lot four having, as we have already seen, been barred by the statutory limitation, they were entitled to no relief, and the decree in their favor is erroneous.

The decree will be reversed with directions to the court below to dismiss the petition at the costs of the petitioners.

Decree reversed.