ARCHIBALD CAMPBELL

*v.*

FANNIE JACOBSON *et al.*

*Filed at Ottawa, May 9, 1893.*

1. MECHANIC'S LIEN—*only under contract with the owner.* It is an indispensable requisite that the labor and material for which a mechanic's lien is sought to be enforced, shall have been furnished by the petitioner under and in pursuance of a contract with the owner of the land. When the contract is made with the husband of the owner in his name, without the knowledge of the wife, and she does not ratify it, and has not held him out as her agent or the owner, no lien can be enforced against her property.

2. SAME—*where husband acts as agent of his wife.* Where the husband enters into a written contract in his own name for the erection of a building on his wife's land, if he in fact acts as her undisclosed agent, that fact should be alleged in the petition, and the burden of showing the husband's agency and authority to make the contract will rest upon the party seeking the lien.

3. Where the petition for a mechanic's lien alleges an express contract with the land owner, entered into on her behalf by her husband as her agent, and contains no allegations of fraudulent conduct on her part, and fails to set up any facts calling for the doctrine of estoppel, the petitioner can not recover on the ground that the wife fraudulently allowed her husband to hold himself out as the owner of the lots and enter into the contract, especially when her title was of record. The petitioner must stand or fall by the case made in his petition.

4. SAME—*statutory conditions must be complied with.* A mechanic's lien does not exist and is not enforcible of common right, but it is purely a statutory lien, and can be maintained only upon those conditions which the statute imposes; and the statute having required every contractor, or creditor who wishes to avail himself of the provisions of the statute, to file in a public office a sworn statement of a particular character, that requirement must be at least substantially complied with, and, unless that is done, his lien can not be enforced.

5. SAME—*statement required by statute.* It seems that the sworn statement required by section 4 of the lien act, as amended in 1887, to be filed with the clerk of the Circuit Court, is fatally defective, if it makes no reference to the owner of the lot on which the lien is claimed, but alleges title in the husband of the owner, and that the amount claimed is due from him.

6. If such statement fails to set forth "the times when such material was furnished or labor performed," it will be fatally defective, and will not constitute any basis for a mechanic's lien.

7. SAME—*statute construed as to sworn statement.* Section 28 of the lien act provides that no creditor shall be allowed to enforce a lien to the prejudice of any other creditor, incumbrancer or purchaser, "unless a claim for a lien shall have been filed with the clerk of the Circuit Court, as provided in section 4 of this act, within four months after the last payment shall have become due and payable," and also provides that suit shall be commenced within two years after the filing of the claim, or the lien shall be vacated: *Held,* that while section 28 is essentially a statute of limitation, barring relief against other creditors and purchasers, unless the claim is filed within four months after the maturity of the last payment, it has not the effect of dispensing with the filing of the claim when the lien is sought to be enforced only against the owner of the premises. Such sworn statement is required to be filed for the benefit of the owner of the premises.

8. SAME—*notice of title of married woman—whether estopped to deny acts of her husband.* Where a wife has her title deeds recorded, the records will afford constructive notice of her title, and if she does no act tantamount to a representation on her part that the title is in her husband, and she is not apprised of any claims of ownership being made by him, and the husband erects a building on her lot claiming it as his own, the wife will not be estopped from denying that her husband was the owner, on petition for a mechanic's lien for labor and materials furnished the husband, for the erection of a building on said lot.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Superior Court of Cook County; the Hon. H. M. SHEPARD, Judge, presiding.

On the 19th day of December, 1890, two separate petitions, which were afterwards consolidated, were filed by Archibald Campbell against Fannie Jacobson, Morris Jacobson, Solomon Freehling and others, for the establishment and foreclosure of mechanics' liens upon two adjoining lots, known as 3142 and 3144 Shields avenue, Chicago, for labor and material furnished by Campbell in the construction of buildings thereon. The labor and material for which the liens are claimed, were furnished under and in pur-

suance of a written contract, bearing date May 7, 1890, purporting to have been executed by Campbell of the first part and Morris Jacobson of the second part, under their respective hands and seals.

The lots upon which the buildings were erected belonged to Fannie Jacobson. The petitions allege, in substance, that on the day of the date of the contract, Fannie Jacobson, and her husband, Morris Jacobson, applied to the complainant to erect the buildings in question; that thereupon the petitioner and Fannie Jacobson, by her husband and agent, Morris Jacobson, entered into a written contract, being the contract above mentioned, and that in compliance with the terms of such contract the petitioner commenced work thereunder, and erected the buildings in accordance therewith, on the lots above mentioned, Fannie Jacobson being, at the date of the contract, the owner of the lots; that petitioner in all respects complied with and performed the contract, and procured from the architect and superintendent of the buildings named in the contract a certificate in writing, one-half to apply on each building, for $2,565.80, that being part only of the amount due on the two buildings, one-half of which, or $1,282.90, was to apply on each building; that in addition to the work done, for which he holds the certificate, he did extra work, by order of Fannie Jacobson, by Morris Jacobson, her agent, amounting to $150 on each building, and for which he applied to the architect to grant him a certificate; that he also applied to the architect for a certificate that he had completed his part of the contract, according to its terms; but the architect refused both certificates, on the ground, as alleged by him, that he had been discharged by Fannie Jacobson; that immediately after the completion of the buildings, towit: on November 1, 1890, Fannie Jacobson occupied and took possession thereof; that there is now due the petitioner a balance of $1,432.90 on each building; that he has requested her to pay such balance, but that she has

neglected so to do; that such payment not being made, the petitioner, on December 16, 1890, filed his statement and claim for a mechanic's lien in the office of the clerk of the Circuit Court of Cook county, showing $1,432.90 due and unpaid on each building, as required by statute, by means whereof the petitioner is entitled to a lien upon the premises for the amount so remaining due.

The petitioner further alleges, on information and belief, that Fannie and Morris Jacobson, on or about September 30, 1890, conveyed the premises to Solomon Freehling, and that he and the other defendants have or claim some interest in the premises, as purchasers, mortgagees, judgment creditors, or otherwise, the precise nature of which is unknown to the petitioner, but that such interests, if any there are, have accrued since and are subject to the petitioner's lien.

Morris Jacobson and Fannie Jacobson answered separately, each denying the equities alleged in the petitions. Freehling answered, claiming an interest as mortgagee, under a warranty deed executed by the Jacobsons, but intended as a mortgage. The other defendants also answered, claiming as incumbrancers under a deed of trust in the nature of a mortgage.

A replication being filed, the cause was referred to a master to take proofs and report the same with his conclusions, and the master, on the evidence taken before him, found and reported all the material issues in favor of the petitioner, and that there was due the petitioner on each building the sum of $1,432.90, and that the petitioner was entitled to mechanics' liens on each building for that amount. Exceptions were filed to the master's report, and the cause coming on for final hearing in the Superior Court, the exceptions were sustained, and on August 12, 1891, a decree was entered dismissing the petitions, at the petitioner's costs, for want of equity.

On the day the decree was entered, the petitioner filed his motion, supported by an affidavit and exhibits, to set aside the decree and for a re-hearing, and for leave to introduce further evidence, and such motion was continued from term to term until November 9, 1891. On that day, the motion coming on to be heard, a further motion was interposed by the petitioner for leave to amend the petition; and upon the latter motion, by consent of the defendants, leave was given the petitioner to amend his petition *nunc pro nunc* as of the day prior to the one on which the decree was entered, but without prejudice to the decree. The motion for a re-hearing, and to be permitted to introduce further evidence, was thereupon denied.

The amendment to the petition, filed in pursuance of the leave thus given, added to the petition allegations in substance as follows: That on or about October 7, 1890, after the completion of the work, the petitioner made out, gave and furnished to the owner of the premises in question, viz., Fannie Jacobson, or to her agent, as required by the statute, a statement under oath, of the number and names of every sub-contractor, mechanic or workman in his employ, and persons furnishing materials, giving the names and the rates of wages and terms of the contract, and how much was then due or to become due to them, and each and every of them, for work done and materials furnished, in accordance with the statute, and that the petitioner did, prior to the commencement of his suit, and within the time prescribed by the statute, give, serve upon and furnish to the owner of the premises each and every notice, and did and performed every act required in such case by the statute. Also, that on December 13, 1890, the petitioner duly filed with the clerk of the Circuit Court of Cook county, two certain statements, accounts and demands due him, verified by his affidavit, one applicable to each of the buildings in question. A copy of these statements was appended to his amendment as exhibits. They are identical

in their language, except that one applies to the building on the lot known as number 3142, and the other to the building on lot number 3144. The statement applicable to number 3142 is as follows:

"Archibald Campbell, being first duly sworn, on oath deposes and says, that he is the contractor for carpenter labor and material, on the flat building known as No. 3142 Shields avenue, situated upon the premises hereinafter described, of which M. Jacobson is the owner, and that there is due him, as such contractor, the sum of $1,432.90, of which he holds the certificate of John J. Kountz, the architect of said building, for the sum of $2,565.80; $1,282.90, or one-half, to apply upon 3142 Shields avenue and one-half to apply on another contract, and the balance of said amount of $1,432.90, being for extra work ordered by the said Jacobson and the said architect, and for which deponent has been unable to get a certificate, owing to the fact that the said Jacobson has discharged said architect, and said architect therefore declines to act further in the matter, or to issue any certificate; that the date of said certificate for $2,565.80 is October 7, 1890, and the amount of $1,432.90, together with the interest from October 7, 1890, is due from said M. Jacobson for and on account of said work performed under said contract, and that the above is a just and true statement of the account due him, as aforesaid, from said M. Jacobson for work, labor and material furnished and used in said two buildings, and which amounts are due and payable to him from said M. Jacobson from and after the respective dates thereof. And affiant says that the work, labor and material contributed by him, as aforesaid, were used in the construction and improvement of the said flat building aforesaid, situated upon the following described premises (describing them). And affiant says that there is now due and owing to him from said M. Jacobson, at whose request said work, labor and materials were furnished, as aforesaid, after allowing to him all just credits, deductions and set-offs, the sum

of $1,432.90, for which amount affiant claims a lien upon the above described premises.''

The petitioner having taken the record to the Appellate Court by writ of error, the decree was there affirmed, and the present appeal is from the judgment of affirmance.

Messrs. MILLER & STARR, for the appellant:

The merits of the case are clearly with appellant, and upon the evidence he is entitled to a decree as found by the master.

When a married woman holds her husband out to the world as her agent, or allows him to act as her agent with reference to her property, and others act thereon, she will be estopped to deny his agency. *McNichols* v. *Kettner*, 22 Bradw. 493; *Bruck* v. *Bowermaster*, 36 Ill. App. 510; *Higgins* v. *Ferguson*, 14 Ill. 268.

Where a party fails to make known his rights, when equity and good conscience require that he should speak, to protect the interest of others, he can not be heard, as against them, to assert such rights. *Cochran* v. *Harrow*, 22 Ill. 345; *Lloyd* v. *Lee*, 45 id. 277; *Brooks* v. *Record*, 47 id. 30; *Kane Co.* v. *Harrington*, 50 id. 232; *Davidson* v. *Holmes*, 23 id. 85; *Eldridge* v. *Walker*, 80 id. 270; *Leeper* v. *Hersman*, 58 id. 218; *Walker* v. *Multveen*, 79 id. 18.

''If the holder of the legal title to land stands by and sees a contract made by the party in possession for work upon the same by a mechanic, without disclosing his title or claim, he will be estopped from setting up his legal title to defeat the lien of the mechanic.'' *Donaldson* v. *Holmes*, 23 Ill. 83.

''Something has been said about Mrs. Schwartz' interest in this lot, and it is denied by appellants, of whom she is one, that the lien operated on it. The contract for the building was made with her full knowledge, approbation and consent, as we are bound to infer from the testimony, and she did not disclose her interest. She knew very well

396     CAMPBELL *v.* JACOBSON *et al.*

Brief for the Appellees. Opinion of the Court.

what was going on, and she took no steps to prevent it, and ought now to be estopped from objecting or of setting up her right to defeat the plaintiff. The cases of *Higgins* v. *Ferguson*, 14 Ill. 269, and *Donaldson et al.* v. *Holmes*, 23 id. 85, cited by appellees, are in point:" *Schwartz et ux.* v. *Saunders*, 46 Ill. 24; *Anderson* v. *Armstead*, 69 id. 454.

The evidence clearly shows a substantial compliance by complainant with every requirement of the statute.

Messrs. BLUM & BLUM, for the appellees:

The bare fact that a wife, long after improvements upon her property are begun, is informed that such work is going on, is not sufficient to make her property subject to a mechanic's lien. *Geary* v. *Hennesey*, 9 Bradw. 17; *Flannery* v. *Rohrmeyer*, 46 Conn. 558; *Gilman* v. *Disbrough*, 45 Conn. 564; *Wendt* v. *Martin*, 89 Ill. 139.

The estate of a wife can not be held under a contract made with the husband under the circumstances of this case. *Lauer* v. *Bandow*, 43 Wis. 556; *Banto's Appeal*, 55 Pa. St. 386; *Bliss* v. *Patten*, 5 R. I. 376; *Jones* v. *Walker*, 63 N. Y. 612; *Hughes* v. *Peters*, 1 Coldw. (Tenn.) 66; *Baxter* v. *Hutchings*, 49 Ill. 117; *McCarthy* v. *Carter*, 49 id. 53; *Wetherill* v. *Ohlendorf*, 61 id. 189; *Wendt* v. *Martin*, 89 Ill. 139; *Little* v. *Vredenburg*, 16 Ill. App. 189; see 9 Brad. 17; *Anderson* v. *Armstead*, 69 Ill. 454.

Appellant failed to give the statutory notice before filing his petition. The statement filed in the clerk's office failed to show the time when the material was furnished or the labor performed. This is fatal. *McDonald* v. *Rosegarten*, 36 Ill. App. 71; see, also, R. S., ch. 81, sec. 35.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

The first section of the statute in relation to Mechanic's Liens provides, that any person "who shall, by contract, express or implied, or partly expressed and partly implied, with the owner of any lot or piece of land, furnish labor or

material'' in erecting a house or other building on such land, shall have a lien upon the lot or piece of land and upon the building for the amount due him for such labor and material. It thus appears that the first and indispensable requisite is, that the labor and material for which the lien is sought to be enforced shall have been furnished by the petitioner, under and in pursuance of a contract with the owner of the land.

The petitioner in this case alleges and relies upon an express contract between him and Fannie Jacobson, the owner of the land. He avers in his petition that this contract was executed on behalf -of Fannie Jacobson, by Morris Jacobson, her husband and agent, and a copy of the contract is exhibited and made a part of the petition. On referring to the contract itself, we find a document which makes no reference whatever to Fannie Jacobson, but which purports to be a contract between Archibald Campbell, party of the first part, and Morris Jacobson, party of the second part, and the contract is executed by these parties under their respective hands and seals. In the body of the contract Morris Jacobson is referred to as the owner of the premises upon which the proposed buildings were to be erected. Unless this can be held to be in fact the contract of Fannie Jacobson, the petitioner has manifestly no title under the statute to a lien, at least upon the case made by his pleadings.

At the time the contract was executed Fannie Jacobson was not present, nor had she taken any part in the negotiations out of which the contract grew. The petitioner at that time had no actual knowledge that she was the owner of the lots upon which the proposed buildings were to be erected, but supposed that they belonged to Morris Jacobson, and the contract was entered into by him on that basis. He treated with Morris Jacobson as a principal contracting party, and not as the agent of his wife, and upon the face of the contract as executed, Morris Jacobson

appears to be a principal. The only theory upon which Fannie Jacobson can now be substituted in place of her husband as a party to the contract is, that she was an undisclosed principal, and that her husband, in entering into the contract, really acted as her agent.

The petitioner having alleged and relied upon a contract thus executed under seal by Morris Jacobson as the ostensible principal, there may perhaps be difficulty, on technical common law grounds, in holding Fannie Jacobson liable thereon as an undisclosed principal. But, waiving that point, it is very clear that the burden of showing that the relation of principal and agent existed between Fannie Jacobson and her husband, and that he had authority to enter into a contract, on her behalf, for the erection of buildings on her lots, is on the petitioner.

After carefully considering the evidence bearing upon this question, we are brought to the conclusion that the chancellor who heard the cause was justified in holding that the preponderance of the evidence on this point was against the petitioner. No direct evidence was offered of any authority, on Morris Jacobson's part, to act as his wife's agent in the premises. She testifies positively that she never gave him such authority, and that she did not even know that the contract was made, or that the erection of the buildings was in contemplation, until at least a month after the date of the contract, nor until the buildings were well under way. She further says, that when she learned of the enterprise, she strongly objected to it, and made such objections repeatedly afterwards; that she was at the buildings, as she thinks, but once or twice while they were in process of erection, and that was when they were nearly finished.

Morris Jacobson testifies that, in executing the contract, he was acting for himself and not in any way for his wife; that he did not represent her, and had no authority so to do; that in his negotiations with the petitioner, her name

was not mentioned; that she had nothing whatever to do with the construction of the buildings, and knew nothing about what he was going to do; and that he merely went to work with his own money and erected the buildings.

One of the witnesses, who was the petitioner's foreman, testifies that about October 21st, and when the buildings were nearly completed, Mrs. Jacobson came there, and that he, at her request, explained to her what the "trim" was to be, she saying at the time that Mr. Jacobson had already explained it to her; that she said she was well pleased with the "trim" they were putting on; that she was not at all pleased with the other, and was glad that Mr. Jacobson had had it changed, and that she had ordered it to be changed. Mrs. Jacobson, on the other hand, positively denies that she made these statements, or that she ever gave any orders or directions in relation to any changes or alterations in the buildings.

Another circumstance relied upon by the petitioner, to show the agency of Mr. Jacobson is, that during the construction of the buildings Jacobson negotiated a loan, in order to get the means to complete the buildings, and that to secure the loan, Mrs. Jacobson joined with him in the execution of a deed of trust on these lots, with the understanding that the money borrowed should go into his hands to be used for that purpose. This she did, as she explains, upon his telling her that he wanted to go on finishing the buildings, and that unless he had more money to go ahead with, he would lose what he had already invested; that he wished her to go his security, and that, to relieve him of his embarrassment, she consented to do so, and executed the deed for that purpose. It also appears that after the buildings were completed, Mrs. Jacobson permitted her husband to collect the rents therefor without accounting to her for the same.

The foregoing are substantially all the facts relied upon as tending to charge Mrs. Jacobson as an undisclosed prin-

cipal, upon the contract entered into by her husband. We are of the opinion that, when all the evidence is considered, these circumstances are insufficient to produce that result. None of them seem to us to be necessarily inconsistent with the theory, supported by the testimony of Mr. and Mrs. Jacobson, that the erection of the buildings, though on Mrs. Jacobson's property, was an enterprise undertaken by Mr. Jacobson for himself and in his own interest, and without his wife's sanction or authority. And if that theory is correct, the buildings can not be said to have been erected in pursuance of any contract with the owner of the lots, so as to entitle the petitioner to a lien thereon.

But it is urged that Mrs. Jacobson, by standing by and permitting her husband to hold himself out as the owner of the lots, and by allowing him to enter into a contract with the petitioner for the erection of buildings thereon, is guilty of such fraudulent conduct as should preclude her from disavowing her husband's acts, or alleging that the lots were not in fact his. It might perhaps be a sufficient answer to this contention to say, that the petitions are not framed on any such theory. They contain no allegations of fraudulent conduct on the part of Mrs. Jacobson, nor do they set out any facts calling for an application of the doctrine of estoppel. They allege an express contract between the petitioner and Mrs. Jacobson, entered into on her behalf by her husband as her agent, and the petitioner must stand or fall by the case thus made by his petitions.

But we are unable to find anything in the conduct of Mrs. Jacobson, as disclosed by the evidence, which calls for an application of the doctrine of estoppel. Long before the date of the contract relied upon, the evidence of her title had been placed on record. The petitioner was thereby charged with constructive notice that she was the owner of the lots, and he was bound by such notice. But without examining the public records, as every person seeking to acquire an interest in lands is required to do, he chose to

assume that Mr. Jacobson was the owner, and to base his action upon that assumption.

We fail to find any evidence in the record of any act on the part of Mrs. Jacobson upon which the petitioner had a right to rely as tantamount to a representation on her part that the title was in her husband. If Mr. Jacobson, at the time the contract was executed or afterwards, claimed or held himself out to be the owner, there is not a syllable of evidence tending to show that she was apprised of that fact. It is true, she stood by and permitted him to put up buildings on her lots, in the sense that she did not positively forbid, or take legal means to prevent, his doing so, but having no knowledge that he was holding himself out to be the owner, her mere non-action, after having given notice of her rights to all the world by placing her title on record, can not have the effect of precluding her from denying that her husband was in fact the owner.

If she had withheld her deed from record until after the contract had been entered into, as was the case in *Schwartz* v. *Saunders*, 46 Ill. 18, thus placing it in the power of her husband to hold himself out to the world as the owner of the property; or if she had fraudulently permitted her husband to represent himself as such owner, as appeared to be the case in *Oglesby Coal Co.* v. *Pasco*, 79 Ill. 170, the case would doubtless have been different. But nothing of that kind is shown. If the petitioner has been defrauded, the fraud is one for which she is not responsible, and we find no warrant, either in the pleadings or in the evidence, for holding her estopped to deny that her husband's representations that he was the owner of the lots, if such were made, were true.

But the decree of the Superior Court, denying the petitioner a lien, may be sustained upon another ground. The fourth section of the statute, in relation to Mechanic's Liens, as amended by act of March 31, 1887, is as follows:

"Every creditor or contractor who wishes to avail himself of the provisions of this act, shall file with the clerk of the Circuit Court of the county in which the building, erection or other improvement to be charged with the lien is situated, a just and true statement, or account or demand due him, after allowing all credits, setting forth the times when such material was furnished or labor performed, and containing a correct description of the property to be charged with the lien, and verified by an affidavit. Any person having filed a claim for a lien, as provided in this section, may bring a suit at once to enforce the same, by bill or petition, in any court of competent jurisdiction, in the county where the claim for a lien has been filed."

It was proved at the hearing that the petitioner, on the 13th day of December, 1890, filed in the office of the clerk of the Circuit Court of Cook county, two sworn statements, one in relation to the building erected on lot 3,142, and the other in relation to the building on lot 3,144, such statements being the same as those appended to the amendment to his petitions filed *nunc pro tunc* by leave of the court, a copy of one of which is set forth at length in the statement preceding this opinion. Those statements make no reference to Fannie Jacobson, but allege that Mr. M. Jacobson is the owner of the premises upon which the lien is claimed, and that there is due the petitioner from M. Jacobson, for work, labor and material furnished, under a contract with him, the gross sum of $1,432.90 on each building. It is, to say the least, very doubtful, whether a statement, in which the owner of the property is not named, or in which no claim is made against the true owner, but in which the indebtedness is claimed to be due from another party, is a sufficient statement to answer the requirements of the foregoing section. Especially is this so in view of the provisions of section 53 of the statute, which requires the clerk of the Circuit Court where the lien.

has been filed, to indorse upon the statement the date of filing, and make an abstract thereof in a book kept for that purpose, containing the name of the person filing the lien, the amount of the lien, the date of filing, *and the name of the person against whom the lien is filed,* together with a description of the property charged with the lien. It is manifest that in this case the statement was not sufficient to enable the clerk to enter in his abstract, the name of Fannie Jacobson as the person against whom the lien was filed.

But a more serious difficulty with the statements is, that they wholly failed to set forth "the times when such material was furnished or labor performed." That it should set forth these facts seems to be an imperative requirement of the statute. The statements were merely that there was due the sum of $1,432.90 on each building, and that the petitioner held an architect's certificate, dated October 7, 1890, for $2,565.80, one-half of which was due on each building, and that there was due a further sum of $150 on each building for extra work, for which he had not been able to obtain a certificate. But there is no attempt to give the date or dates of furnishing the material or the performance of the labor, nor is there anything in the statements from which those facts can be ascertained.

A mechanic's lien does not exist and is not enforceable of common right, but it is purely a statutory lien, and can be maintained only upon those conditions which the statute imposes. And the statute having required every creditor or contractor who wishes to avail himself of the provisions of the statute to file in a public office a sworn statement of a particular character, that requirement must be at least substantially complied with, and, unless that is done, his lien can not be enforced.

The point, however, is made by counsel for the petitioner, that the provisions of section 4 are intended solely for the benefit and protection of purchasers, incumbrancers and

other creditors, and that a failure to file the statement therein provided for does not concern the owner of the premises. There is nothing giving countenance to that view in the language of the section, its provisions being, that *every creditor or contractor* wishing to avail himself of the provisions of the statute should file the statement. But the conclusion contended for is sought to be based upon section 28, which provides that no creditor shall be allowed to enforce a lien to the prejudice of any other creditor, incumbrancer or purchaser, "unless a claim for a lien shall have been filed with the clerk of the Circuit Court, as provided in section 4 of this act, within four months after the last payment shall have become due and payable." And it is provided that suit shall be commenced within two years after the filing of the claim, or the lien shall be vacated. We are unable to give this section the force contended for. It is essentially a statute of limitations, and its effect is to bar relief as against other creditors, incumbrancers and purchasers, unless the claim is filed within four months after the maturity of the last payment. But it has not the effect of dispensing with the filing of the claim, where the lien is sought to be enforced only against the owner of the premises.

We are of the opinion that the decree denying the lien and dismissing the petitions was proper, and the judgment of the Appellate Court affirming the decree will be affirmed.

*Judgment affirmed*