76   335
179s 553

## Thomas J. Prendergast et al. v. John McNally et al., Consolidated with Louis Bastrup et al. v. John McNally et al.

1. PRACTICE—*Where Part of the Record is Not Properly Certified.*—Where part of the record is not properly certified, the proper practice is to move to strike the part not properly certified from the record.

2. EQUITY PRACTICE—*Disposition of Exemptions to Master's Report.*—A decree disposing of exceptions to a master's report *en masse* is not a proper practice; it should specify what exceptions were sustained and what overruled. Sustaining exceptions *en masse* leaves the Appellate Court no alternative but to examine the report and evidence in detail, to determine, if possible, if there is any basis on which the decree may be sustained.

3. MECHANICS' LIENS—*Under the Act of 1874.*—The statute of 1874 gave the right to a lien only where the contract was with the owner of the land.

4. SAME—*Building upon Adjoining Lots.*—Where buildings upon separate adjoining lots are erected under a single contract with the owner of both lots, the porch roof extending as a continuous roof across both lots, and the whole building heated by one steam plant, *it was held* to constitute one building, and unnecessary that a claim for a lien should be divided between the two lots.

5. AGENT—*Power to Bind His Principal by a Contract Under Seal.* —In order to bind his principal by a contract under seal, and to make it his contract, it must purport on its face to be the contract of the principal, and the seal must purport to be his. The agent can not ordinarily bind his principal by a sealed contract in his own name, nor can the principal ordinarily avail himself of such a contract, and sue the other contracting party thereon. An undisclosed principal whose agent has made such a contract in his behalf, can neither sue nor be sued upon it.

6. ESTOPPEL—*Husband and Wife—Mechanic's Lien.*—When the contract to erect a building upon the wife's lot is made with the husband, in the belief that he is the owner (the contracts stating such to be the case), if the wife with full knowledge consents to and approves of all his acts and doings with reference to the making of the contract and the construction of the buildings, she will be estopped from asserting her title, as against the contractor, in a proceeding to enforce a mechanic's lien.

7. FRAUD—*Sealed and Unsealed Instruments—Equity.*—A court of equity should no more permit a fraud to be perpetrated under the guise of a sealed contract than it should when the contract is verbal or in writing, but not under seal.

**Mechanic's Lien Proceedings.**—Trial in the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Hearing and decree for defendants; complainants appeal. Heard in this court at the March term, 1898. Reversed with directions. Opinion filed May 9, 1898.

## STATEMENT OF FACTS.

Appellant Prendergast filed his bill September 17, 1894, in the Circuit Court of Cook County, against the appellees, Catherine and John McNally and others, seeking to enforce a mechanic's lien for mason work and materials upon lots 23 and 24, block 1, in Miller & Rigdon's subdivision of block 20, in School Trustees' subdivision in section 16, township 38 north, range 14, in Cook county, and known as Nos. 601 and 603 Fifty-fifth street, Chicago.

Appellant Eilenberger filed a cross-bill, asking a mechanic's lien for carpenter work and materials, on the same lots; appellant E. Burkhardt & Son, a corporation, filed its intervening petition, also asking a mechanic's lien on the same lots for cut stone work and materials, and appellant Norton filed his intervening petition, asking a mechanic's lien on the same lots for drawing plans, etc., and superintend-

ing the construction of a building. The bill of Prendergast was subsequently twice amended, issues were made by answers of the several parties in interest, and replications to such answers.

Five other cross-bills and intervening petitions were filed in the case by as many lien claimants, on which issues were made and the several claims disposed of by the court, but they are not here in question, though contained in the record. The case was referred April 5, 1895, to the master to take proof and report the same to the court, with his opinion on the law and the evidence. The appellants Bastrup & O'Neill, on December 19, 1895, filed their bill in the Superior Court of Cook County against said Catherine and John McNally, all the appellants and others, to foreclose a trust deed on said lots made by the McNallys to secure the payment of their promissory note of $3,000 made to Bastrup & O'Neill, dated May 10, 1895, and bearing interest at six per cent per annum, which trust deed was recorded May 27, 1895. In the Superior Court the McNallys and all the appellants (except Norton, who filed an answer claiming a lien) were defaulted and the bill as to them was taken as confessed, and the cause, after issues made, was referred to the master of that court to take proof and report his conclusions thereon. The master reported to the Superior Court, among other things, that Bastrup & O'Neill were entitled to a lien and decree by virtue of their trust deed, amounting to $3,350, and interest at six per cent per annum from May 10, 1895, on $3,000, to date of his report, May 13, 1896; that Prendergast, Eilenberger and Burkhardt & Son, having made default and the bill having been taken as confessed as to them, if they were entitled to any liens, the same accrued since the lien of Bastrup & O'Neill, and was subject to such lien; that Norton, having failed to make any proof of his lien, was not entitled to a mechanic's lien, and recommended a decree, among other things not in question, that the lots be sold to pay the amount found due to Bastrup & O'Neill, and that any surplus remaining be paid to Catherine McNally.

Before any further proceedings in the Superior Court, that court, May 25, 1896, ordered that the cause of Bastrup & O'Neill v. McNally et al., be transferred to the Circuit Court, to be consolidated with the suit of Prendergast v. McNally et al., then pending in the latter court, and that all testimony theretofore taken before the master in the Superior Court be considered as evidence taken in the Circuit Court, and the consolidated case of Prendergast v. McNally et al., and the findings made by the master in regard to claims proved before him, should be considered as master's findings in the Circuit Court, and that no further testimony should be taken on either side, and that all pleadings, orders, reports and records filed or entered in the Bastrup case in the Superior Court should stand as pleadings, orders, reports or records in the Bastrup case in the Circuit Court, and in the cause of Prendergast v. McNally consolidated therewith.

The master of the Circuit Court, having made his report, dated January 24, 1896, upon evidence taken before him in the case of Prendergast against McNally et al., it was filed in the Circuit Court, together with the objections thereto of the several parties, and the evidence on which the report was based, as were also filed all the files, orders and master's report and objections thereto, and evidence on which the latter report was based, of the case of Bastrup & O'Neill v: McNally et al., and thereafter, without any formal order of consolidation being entered by the Circuit Court, there was a hearing before the chancellor of the two causes as if consolidated, without any objection by any of the parties being made in the Circuit Court, upon all the pleadings, the two masters' reports, the evidence on which said reports, respectively, were based, the objections of the several parties to said reports, which, by order of court, were to stand and be considered as exceptions to the reports, respectively, and decree was entered in the two cases consolidated, finding among other things, not in question on this appeal, that appellants Eilenberger, Norton and Burkhardt & Son, were not entitled to liens, and dismissing the cross-bill of Eilen-

berger and the intervening petitions of Burkhardt & Son and Norton, also finding that Prendergast was entitled to a lien for only $43.20, and that he was not entitled to a lien for the balance of his claim, and decreeing a lien in his favor for $43.20; also finding that Bastrup & O'Neill were entitled to a lien under their trust deed as of May 27, 1895, and decreeing a sale of the lots in question, and distribution of the proceeds, after payment of costs, among the several parties, claimants of liens, according to priority, as fixed by the decree. This decree, among other things, recites the order of the Superior Court entered in the Bastrup case above stated, and that the complete record of and all files in that cause transferred to the Circuit Court are made a part of the record in the case of Prendergast v. McNally et al., "and the said cases having been and being hereby consolidated by this court, and the thus consolidated causes now coming on to be heard upon the amended bill of complaint of Thomas J. Prendergast, etc.,  *  *  *  and the consolidated causes coming on to be heard upon the bill of complaint of Louis Bastrup and Hugh O'Neill, etc.,  *  *  * which said bill has heretofore been and is hereby taken as confessed by and against the following defendants," among others, Prendergast, Eilenberger and Burkhardt & Son, " but which confession is hereby set aside." It also states that it appears to the court " that all issues in said consolidated cause are made up and complete, as if both were one case commenced and pending in this court."

It is also ordered by the decree that the two reports of the masters on which the hearing was had, " be and the same are hereby approved and confirmed in all matters consistent with this decree, and as to all matters inconsistent with this decree the said reports are hereby disapproved,  *  *  *  and that all objections and exceptions heretofore filed by either of the parties to the consolidated causes to the reports of the masters (naming them), to sustain which would be inconsistent with this decree, are hereby overruled, and as to all such objections and exceptions, to overrule which would be inconsistent with this decree, the said objections and exceptions are hereby sustained."

There is nothing further in the record by which it can be told what exceptions to the master's reports were sustained and what overruled by the court. There are 158 exceptions to the report of the Circuit Court master, and eleven exceptions to the report of the Superior Court master, and we have no means of knowing from the record on what theory or for what reasons the chancellor allowed or disallowed any claim for lien, except as we may infer by examination of the very voluminous record to find the evidence for and against the several claims. It is, however, unnecessary to consider the report of the Superior Court master except as to the claim of Bastrup & O'Neill under their trust deed, as it contains no reference to the claims of appellants Prendergast, Eilenberger and Burkhardt & Son, save that it states they were in default, and if they had any liens the same were subject to the lien of Bastrup & O'Neill, and as to appellant Norton, that he failed to offer any proof and was therefore not entitled to a lien.

The report of the Circuit Court master in so far as it relates to the matters in question in this appeal, finds the following general facts, in substance, which are sustained by the clear preponderance of the evidence in the record, viz.:

Catherine McNally was the owner in fee of the lots in question in 1894, and the title of record had been in her from September, 1883. Each of the appellants did work and furnished materials for the same or did work on a new building located on said lots under contracts with John McNally, the husband of Catherine, all of them being in writing and under seal, except Norton's. Prior to the construction of this building Catherine and John McNally resided in a frame building on the north front of the same lots, Garfield Boulevard, which was moved to the rear of the lots preparatory to the construction of the new building, and placed across the two lots and made to front the east on Wright street, and they continued to reside in this frame building all the time the new building was in process of construction, and in plain sight of it, only a few feet distant.

John McNally, at the time of the making of the contracts with appellants, and during the construction of the building, had very small means, and was not in a position financially to construct the building, or any considerable part of it.

The appellant Norton, an architect, prepared plans in 1893, at the request of John McNally, for a building which was intended to cover the whole of the lots. Norton saw Mrs. McNally, and explained the plans to her, being referred to her by her husband. She also called at his office with her husband and examined the plans. She decided to have a smaller building, not covering the whole lots, for which amended plans were prepared by Norton about January 1, 1894, under which the building in question was constructed. She also talked with Prendergast about moving the frame building, and told him that she preferred to have the new building constructed by the later plans, and talked with him as to its cost and style, particularly referring to a bay window shown in the plans. When bids were put in by the contractors, McNally took them from Norton's office before the contracts were let, and examined them with his wife and Norton. Mrs. McNally told Norton to attend to letting the contracts, and at one time, if he, Norton, did not let the plumbing contract in a hurry, she would get a plumber herself. She finally selected the plumbing and let that contract herself. On different occasions during the construction of the building she expressed an anxiety to get the building rented so she might get an income from it as soon as possible.

The written contracts describe John McNally as owner and refer to him as owner in numerous places, but neither of them has a specific description of any property, referring to the property as " grounds " and " premises, " and are all under seal.

Before the construction of the building commenced, and on February 13, 1894, Mrs. McNally made application for and secured a loan of $13,000, in the application for which, signed by her, she describes in detail the building in ques-

tion, and states that it is to be "a residence for ourselves," and is to cost not less than $15,000, and that the money applied for was to be paid "for labor, material and otherwise," at the option of the persons making the loan, and without further order and request on her part, and that if the loan is not sufficient for the satisfactory erection and completion of the building, she agrees to supply additional funds for that purpose. The trust deeds securing the loan were signed by both Mr. and Mrs. McNally, the money was credited to their joint account, and paid out to contractors during the construction of the building, by authority of Mrs. McNally on certificates made by Norton. She said when she made the application for the loan that she was getting ready to put up a house on these lots, and wanted the loan to pay for the construction. She directed where the dirt taken from the excavation for the building should be taken to make a lawn; was about the building almost daily during its construction; when Prendergast applied to her husband for his first payment, she said in presence of her husband, that she was sorry they were unable to pay, and requested Prendergast to keep on with his work; on another occasion, when there was difficulty about getting brick, she asked Prendergast not to delay the building on that account, but to push it to completion, which he did; that she asked and directed divers changes to be made from the plans and specifications as to work and materials, ordered extra work done, and discussed with the architect as to whom contracts should be let for different parts of the work, at different times hurried up the workmen, and did numerous other acts and made divers statements tending to show that she was acting in her own behalf in and about the construction of the building and making the contracts with appellants, and that in so far as the business was done by and in the name of John McNally, he was acting for her.

The lots are situated at the southwest corner of Garfield Boulevard and Wright street, the corner lot having a frontage on the boulevard of 24 feet 7¾ inches, and the inside

lot of 24 feet.  All the contracts are made as single contracts for doing work and furnishing materials for one entire building, without attempting to divide the work, materials or compensation into two parts.  The building, as planned and constructed, covers the entire width of both lots, and is 55 2-10 feet deep, is a three story structure, facing north on the boulevard, has a stone facing on both the street sides, has two stores on the ground floor and the stories above are divided into two flats on each floor, has a partition or fire wall extending through the building from front to rear, and about two feet above the roof, which is about upon the line between the two lots and built as required by the city ordinance in regard to protection from fire and for receiving and supporting the floor joists.  This wall, however, about midway of the building is interrupted by a light-shaft or court about 5x9 feet, extending from the roof to the ground, with windows opening on each side down to the basement, where there is no opening, the wall being carried around this shaft on both sides and meeting again in the rear.  The flats have separate entrances upon each side of the partition wall, which is 1½ feet thick at basement.  After the building was completed a door was cut through this wall in the basement in order to make the operation of the steam plant, which is in the basement of the Wright street front, and used to heat the whole building, more convenient, and to afford access from one part of the building to another. The steam pipe which conveys steam to the west part of the building passes through this wall.  The different parts of the building might be separated by disconnecting the steam pipe and closing the door through the fire wall.  It appears from the evidence that there is a continuous roof over the porch, extending from the west line of the west lot to the east line of the east lot.  No attempt is made in the evidence to apportion the claims of the several parties between the different parts of the building as divided by the fire wall.

NORTON CLAIM:  The master also finds especially as to the

Norton claim, in substance, that Norton was the architect of the building, drew the plans and made several copies thereof, procured bids from contractors, let and prepared the contracts and supervised the construction of the building during a period of six or seven months; that he made his original arrangement about plans and compensation with John McNally, but as these original plans were not used there could be no recovery for them; that Norton knew that Mrs. McNally was the owner of the property, and he failed to make a case on the principle of estoppel, but that the proof was sufficient to establish that John McNally employed Norton to do what he did, and in so doing acted as the agent of Mrs. McNally; that Norton was entitled to a lien as against Mrs. McNally for $825, less $400 paid him, being five per cent on the cost of construction of the building, $16,500, which was a reasonable price, less said payment; that Norton began his work about January 1, 1894, and completed it September 15, 1894; that he filed his claim for lien within the time required by the statute; that the statement of claim was sufficient, though he failed to sign the oath appended to and following his statement, the notary having certified under oath that Norton made oath that the statement and the matters and things therein stated were true in substance and in fact; that Norton, knowing of Mrs. McNally's ownership of the real estate, concealed that fact from the contractors and material men, and that this conduct on his part should in equity postpone his lien to that of all the other claimants.

PRENDERGAST CLAIM: The master finds specially as to this claim, in substance, that Prendergast had known Mr. and Mrs. McNally for seven or eight years; that he made an agreement in writing with John McNally, about January 8, 1894, with the knowledge, consent and approval of Mrs. McNally, which, as originally prepared, provided for doing the mason work of the building, including the excavation, as originally planned, covering the whole of the lots, for $8,000; that after it was decided not to build the large building, this contract was changed as to date and amount,

making the date February 8, 1894, and the amount to $3,580; that at the time of making the original contract and its change, Prendergast did not know that the title of the lots stood of record in Mrs. McNally, and that he first knew that fact in the summer of 1894, after the work was completed, and made the contract and did the work under the supposition and belief that McNally was the owner of the lots; that no specific time for the completion of the contract was provided by its terms, but that same was fully and faithfully completed, according to its terms, and work done and material placed upon said lots, within one year from the making thereof; that he, at the request of Norton, the architect, did certain extra work on the building, and furnished extra materials which amounted to the sum of $38, for which he was entitled to a lien on the lots; that nothing had been paid to Prendergast, and that the total amount due him under the contract and for extra work and materials was $3,618, for which, with interest at five per cent per annum from June 17, 1894, he was entitled to a lien as of February 8, 1894, on the lots; that two certificates for the full amount due Prendergast were issued to him by Norton, the architect, but that the final certificate was issued before the work was completed, and that the certificates were not to be relied on as showing the performance of the contracts; that Mrs. McNally had full knowledge of and consented to and approved of all acts of John McNally in and about the erection of the building, and conversed with Prendergast at various times with relation to his contract, without disclosing her interest in the lots, urged him on with his work, and promised to pay the amounts called for by the certificates issued to Prendergast; that Prendergast commenced work on the building about the middle of February, 1894, completed the original contract about May 17, 1894, and the extra work about May 19, 1894; that Prendergast, prior to filing his bill in this case, began a suit at law against McNally for the same debt for which he claims a lien in this case, and also filed a statement for lien for the same debt against McNally and

against the same lots on June 23, 1894, which, it is claimed, was a bar to the enforcement of any lien in this case; that his claim for lien in this case was filed in compliance with the statute, September 15, 1894, which was within four months of the time when the last payment was due, thirty days after the completion of the work, under the terms of the contract; that Prendergast's statement for lien was sufficient, under the statute, though it failed to show a specific date for the completion of the work, merely stating the work was done and material furnished between certain dates in 1894.

EILENBERGER CLAIM: The master finds specially as to this claim, in substance, that on February 8, 1894, Eilenberger made a contract with John McNally to do the carpenter work and furnish materials for the same on said building, as actually constructed, for $4,275, having previously signed the same contract when it contained a provision for doing the work on the building, as originally planned, for $8,400; that this contract provided that the work should be finished in a " reasonable time," and the first payment was to be made " within thirty days after the contract is fulfilled; " that Eilenberger commenced work under his contract on said building, and fully performed it according to its terms, completing the work on said building and said lots about July 1, 1894; that he also did extra work and furnished materials for the same by orders of John McNally (which is specifically set out in the report), aggregating $425; that Norton, the architect, issued to Eilenberger three certificates, amounting in all to $7,125, which is $2,425 more than is claimed, but that these certificates are not to be relied on as showing the completion of the work, which is based on other evidence and not on the certificates; that the first certificate for the sum of $2,500 bears the indorsement of John McNally, who paid Eilenberger thereon $1,000 June 8, 1894; that there remains due to Eilenberger on account of his contract, and for said extra work and materials, the sum of $3,700, with interest at five per cent per annum from August 1, 1894,

for which he is entitled to a lien on said lots as of February 6, 1894; that Eilenberger had no knowledge or information when he made his contract or did his work that Mrs. McNally held the legal title to said lots, and that he made the contract with John McNally and did the work and furnished materials thereunder upon the faith of the supposed ownership of the lots by John McNally; that Eilenberger filed his claim for lien in accordance with the statute on October 8, 1894, and that his claim is sufficient under the law, though it states that the work was done and materials furnished from February 8 to August 15, 1894.

CLAIM OF BURKHARDT & SON:   The master finds specially as to this claim, in substance, that E. Burkhardt & Son is a corporation, under the laws of this State, and engaged in business as a cut-stone contractor; that this claimant, about January 8, 1894, made a contract with John McNally to do the cut stone work for said building, as originally planned, and furnish the materials therefor, for $4,100; that this contract was changed about February 8 to 11, 1894, the same as those of the other claimants when it was determined to build the smaller building; that the date of the contract was not changed, the amount to be paid being changed to $2,570; that this claimant commenced work under its contract about February 22, 1894, and proceeded until about May 18, 1894, when it ceased, leaving unfinished the cleaning off of the walls and the tuck pointing, which was a part of the contract; that in all other respects the contract was performed according to its terms; that on June 18, 1894, the contract price of $2,570 became due to the claimant, less the sum of $1,000 theretofore paid, and less the cost of completing said unfinished work, which was worth $30, and was done by McNally, leaving due to Burkhardt & Son $1,540, with interest at five per cent per annum from June 18, 1894, for which it is entitled to a lien on said lots; that the amount paid this claimant was paid by Loeb & Gatzert out of the loan made to construct the building, and in consideration of such payment Burkhardt & Son executed and delivered to Gatzert, trustee, a waiver of lien on

said lots, but that said waiver did not inure to the benefit of Mr. and Mrs. McNally, it not purporting to be to them or for their benefit; that Burkhardt & Son filed its claim for lien September 17, 1894, as required by statute, and that the claim was in substantial and formal compliance with the statute; that Burkhardt & Son contracted with John McNally, relying upon his apparent ownership of the lots, and the contract was made with the full knowledge, consent and approval of Mrs. McNally; that during the progress of the work by Burkhardt & Son she inspected it, knew by whom it was done, and consulted with Henry Burkhardt, the secretary, treasurer, general manager and person charged with the practical carrying on of the business of Burkhardt & Son, as to the nature of the work and as to the work necessary to be done by him in connection with the rear porch of the building.

From an examination of the evidence reported to the court by the master, it appears that as to many of the facts found by him as hereinbefore stated, generally as well as specially, there is a conflict in the evidence, but we think when it is all fully and fairly considered with reference to many circumstances appearing, which are uncontroverted, the findings of the master as to facts are fully sustained.

The report of the Superior Court master was confirmed in so far as it found and recommended a lien in favor of Bastrup & O'Neill under their trust deed for the sum of $3,350 and interest at five per cent per annum on $3,000 from May 10, 1895, and fixed their lien as of May 27, 1895, and no fault is found with the decree in that regard.

On the hearing before the chancellor, and before the rendition of the decree, Prendergast, Burkhardt & Son and Eilenberger each presented to the court, and asked leave to file, amendments to the bill of Prendergast, alleging that although no specific real estate was mentioned in his contract, it was understood and agreed between him and John and Catherine McNally, that the contract referred to the premises in controversy (describing them); to the cross-bill of Eilenberger, in substance the same allegation; and to the

intervening petition of Burkhardt & Son, in substance the same allegation, and the further allegation that John and Catherine McNally failed to perform their part of the contract, in making payments as required by the contract; that Burkhardt & Son was prevented from and refused, without its fault, to perform the cleaning down of the walls of said building, and that the cost of such cleaning down of the walls would be about $25; but the court refused to allow said amendments, or either of them.

Masterson, Fowler & Haft, H. F., F. A. & H. F. Pennington, and G. Langhenry, attorneys for appellants.

James F. Dillon and Francis J. Norton, attorneys for appellant.

Bastrup & O'Neill, attorneys for appellees.

Mr. Justice Windes, after making the foregoing statement, delivered the opinion of the court.

Appellees have moved to strike this case from the docket, because they claim a part of the record was not properly certified. The motion is inapt, and is denied. The proper motion would have been to strike from the record that portion which was claimed not to have been properly certified.

Appellees also claim that as Prendergast, Eilenberger and Burkhardt & Son were defaulted and the bill taken as confessed as to them in the foreclosure case in the Superior Court, and as Norton failed to make any proof in that court, and did not except to the Superior Court master's findings, that even if their claims for lien are allowed, they must be held to be subject to the lien of Bastrup & O'Neill. This contention, we think, is not tenable, because in the final decree it is found that the two causes were consolidated and heard as one cause (no objection being made by any of the parties), and the confession of Prendergast, Eilenberger and Burkhardt & Son was set aside, and Norton's proof of claim was made before the Circuit Court master,

who made a finding in Norton's favor, and also that all issues in said consolidated cause were made up and complete as if both were one case commenced and pending in the Circuit Court. It would have been better practice for these claimants, except Norton, to have either filed answers in the foreclosure case, setting up their claims, or had an order entered in the Circuit Court providing that their bill, cross-bill and intervening petition stand and be considered as their answers to the bill in the foreclosure case, but we think their pleadings, under the decree, are sufficient to set forth their rights, and appellees should not now be allowed an advantage because of this technicality.

Appellants, except Norton, claim that the master's findings and recommendations as to their claims should be sustained, and that the chancellor denied their liens only because no specific property was described in either of their contracts, and Norton contends the master's findings as to his claim should be sustained, except that it should not be postponed to the other liens for work and materials.

There is nothing in the record from which it can be told that the claims, except Norton's, were disallowed, because there was no description of property in the contracts on which the claims were based, the decree not showing that any specific exception to the master's report was sustained or overruled. It no doubt was a great saving of labor to the successful counsel, as well as the chancellor, to have the decree dispose of the exceptions *en masse*, as it did, instead of specifying what exceptions were sustained and what overruled, as it should have done, but such a course is of no assistance to this court, and leaves us no alternative but to examine the report, evidence and exceptions in detail, to determine, if possible, if there is any basis on which the decree may be sustained. The chancellor should in some way, in a case like this, involving the great mass of pleadings, evidence, master's reports and exceptions thereto, some 2,400 typewritten pages of record, make it clear, if possible, on what basis the decree was rendered. This generally may be done by passing upon each exception to the mas-

ter's report separately, or by making some statement in the record of the points of his decision; either practice or both, is to be commended.

The appellants contend that the decree should be affirmed, because : 1st, the contracts, so far are they are in writing, are sealed instruments, executed by the claimants and John McNally, owner ; 2d, that the agency of John McNally is not shown, nor any facts creating an estoppel as to Catherine McNally; 3d, that there are two separate buildings, and the proof and pleadings fail to show a right to separate liens; 4th, that the contracts have no reference to any particular lot of land; 5th, that the proofs do not sustain the pleadings ; and 6th, that none of the claimânts have complied with the statute in filing their statements of claim.

The claims of Prendergast, Eilenberger and Burkhardt & Son, all being by virtue of contracts *under seal* between them respectively and John McNally, *owner*, and there being nothing on the face of the contracts to show that they were or were not intended to be made with Catherine McNally, they can have no lien by virtue of their contracts alone. The statute of 1874, under which these liens are claimed, gives the right to a lien only where the contract was with the owner of the land.    Campbell v. Jacobson, 145 Ill. 389, 400;   Walsh v. Murphy, 167 Ill. 230, and cases cited.

The latter case seems to control as to these claims, in so far as they are based on the contracts alone.   The court says :   " The rule in regard to instruments under seal made by an agent is, that in order to bind the principal and to make it his contract, it must purport on its face to be his contract, and the seal must purport to be his.   An agent can not ordinarily bind the principal by a sealed contract executed in his own name, nor can the principal ordinarily avail himself of such a contract, and sue the other contracting party thereon.   An undisclosed principal, whose authorized agent has made such a contract in his behalf, can neither sue nor be sued on it."   It can, therefore, make no difference that it appears from the master's report, which we

think is fully sustained by the evidence, that John McNally was the agent of his wife in making these three contracts.

The point made that the Walsh case is different in its facts from these three claims, in that it does not appear that in that case the wife, the undisclosed principal, received and accepted the benefits of a contract executed on the part of the claimant, as is shown here, can not be maintained, because it appears she was the owner of the land and sold it after the lien was claimed to have attached. The improvement made by her husband on her land became a part of it, and it must be presumed that when she sold the land she also sold the improvement upon it.

As to the remaining part of appellees' second contention, that no facts are shown creating an estoppel, reliance is had on the case of Campbell v. Jacobson, *supra*. The pleadings in that case were not framed on the theory of estoppel, and the court held for that reason, and because the wife was not shown to be guilty of any fraudulent act, her mere non-action, standing by and permitting her husband to put up buildings on her lots, not positively forbidding him, nor taking legal means to prevent his doing so, but having no knowledge that he was holding himself out to be the owner, when she had given notice to all the world by placing her title on record, did not make a case of estoppel.

The pleadings of Prendergast, Eilenberger and Burkhardt & Son all allege, in substance, that their contracts were made with John McNally in the belief that he was owner (and the contracts state that he was owner); that Mrs. McNally had full knowledge of, consented to, and approved of, all his acts and doings with reference to the making of the contracts and the construction of the building, and that they had no knowledge that she was in fact the owner until after their work was done and materials furnished, and that they relied upon the assumption of ownership by John McNally. It is true, they did not ask who was owner, and did not examine the records. They were justified in not doing so when McNally by his contracts said he was owner, and his wife knew all he was doing about letting the contracts, saw

the contracts, and did the numerous acts found by the master, tending to show that she gave her entire approval to all her husband did. The preponderance of the evidence supports these allegations in their pleadings, and the master so found in substance. The Supreme Court said in the Campbell case, *supra*, speaking of the acts of the wife, "if she had fraudulently permitted her husband to represent himself as such owner, as appeared in the case of Oglesby Coal Co. v. Pasco, 79 Ill. 170, the case would doubtless have been different," thus clearly intimating that though the contract was under seal, her fraud would estop her.

In Anderson v. Armstead, 69 Ill. 454, the court said: " The law is familiar, that where the owner of property holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent parties are thus led into dealing with such apparent owner, or person having the apparent power of disposition, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they have directly dealt, but they are derived from the act of the real owner, which precludes him from disputing as against them, the existence of the title or power he caused or allowed to appear to be vested in the party, upon the faith of whose title or power, they dealt. * * * It is an evident proposition, that a husband can not, with the connivance of the wife, commit a fraud upon another for the purpose of presenting her with the proceeds of the fraud, for their future use and enjoyment." This language was used in a case where the wife was owner and allowed her husband, with her knowledge and consent, to make a contract with a painter to furnish materials and paint her house. The contract was performed and she was held to be estopped from denying that the contract was hers though made with her husband. She, it is true, held a deed for the lot, on which the house was, that was not recorded until four days after the contract, but the case, in principle we think, is applicable to the case at bar. So far as concerns the doctrine of estoppel, we see no reason for a

different rule in case of sealed instruments from that of simple contracts. A court of equity should no more permit a fraud to be perpetrated under the guise of a sealed contract, than it would when the contract is verbal or in writing, but not under seal. See also Higgins v. Ferguson, 14 Ill. 269; Schwartz v. Saunders, 46 Ill. 18–24; Paulson v. Manske, 126 Ill. 78; Henderson v. Connelly, 132 Ill. 103; Baumgartner v. Hall, 163 Ill. 136. We think the work having been done under one entire contract, as to each of the appellants, and without reference to any particular part of the building as distinct from the other, the porch roof extending as a continuous roof across both lots, and the whole building heated by one steam plant, it constituted one improvement, and it was unnecessary that the claims for liens should be divided between the two lots. We think the intention as indicated by the contracts, plans, and the building, as actually constructed, make the improvement an entirety. The case of Moore v. Parish, 163 Ill. 93–100, we consider controlling on this point. See also Orr v. N. W. Mutual Life Ins. Co., 86 Ill. 260; Peck v. Standart, 1 Ill. App. 228; Berndt v. Armknecht, 50 Ill. App. 467–9. Appellees Bastrup & O'Neill would in no way be prejudiced by entire liens as their lien is an entirety on both lots.

It is not essential that the written contracts should describe any specific piece of property. The proof shows clearly, and the master found, that the contracts were made with reference to the construction of a building upon the lots in question, and that the work was done and materials furnished on the building on the same lots. 2 Jones on Liens, Sec. 1327, p. 302; Burns v. Lane, 23 Ill. App. 504; Power v. McCord, 36 Ill. 214; Clark v. Manning, 90 Ill. 380.

There may be some question as to whether the pleadings were sufficient in this regard, but appellants asked leave to file amendments in this respect, which amendments should have been allowed by the court.

What has been said disposes of the fifth claim of appellees, that the proofs do not sustain the pleadings.

As to the sixth contention, that none of the claimants have complied with the statute in filing their statements of lien, the facts in this respect are above set out in the master's findings, and we think all the statements are a substantial compliance with the statute in reference to claims for lien and that appellants should not be denied their liens because of the technical objections made to them by counsel.

The objection made that the statement of lien by Norton is not sufficiently verified and claims too much, is, we think, overcome by the following cases: Millers v. Schofer, 3 Denio, 60; People v. Southerland, 81 N. Y. 1; Langston v. Murphy, 31 Ill. App. 190; Scherman v. Pitcher, 36 Ill. App. 45; Cooper v. Payne, Id. 156; Hayes v. Hammond, 162 Ill. 133–7.

Under the holdings of the Supreme Court in Campbell v. Jacobson, *supra*, Springer v. Kroeschell, 161 Ill. 365–8, and Hayes v. Hammond, 162 Ill. 136, that a substantial compliance with the statute in the filing of the statement of claim for lien is sufficient, we are of opinion that the objections urged against the statements of Prendergast, Eilenberger and Burkhardt & Son, are not tenable.

The findings of the master as to the claim of Norton being, as we have said, sustained by a clear preponderance of the evidence, his claim should have been allowed, but not postponed to that of the other lien claimants, as recommended by the master, because of his not making known to them the condition of the title of the lots, which he knew at the time they made their contracts with McNally. We can not, in this proceeding, purely statutory as it is, consider the question of general equities as between the different claims for liens.

Since the submission of this case, the parties having stipulated that the several amendments in appellant's pleadings mentioned in this opinion be by this court considered as made, and the issues on the pleadings as thus amended, be considered as made, and appellees having waived and released all error in all courts concerning such pleadings, and the sufficiency thereof, and all questions of vari-

ance between the allegations and proofs, the decree of the Circuit Court is reversed, with directions to enter a decree in accordance with the prayer of the pleadings of all the appellants, as thus amended, for the amounts found due them, and of the dates respectively, as found by the Circuit Court master.

And it is further directed that the costs be taxed against the appellee, Catherine McNally. Reversed with directions.