Sarah Mohler, Appellee, v. Luther H. Grange, Appellant.

Gen. No. 5,035.

ESTOPPEL—*when arises to prevent assertion of title.* Where the owner of property allows another to appear as the owner thereof, and innocent persons are thus led into dealing with such apparent owner, they will be protected. By such act a real owner is precluded from disputing, as against them, the existence of the title which he suffered to be vested in the party dealing with them.

Action commenced before justice of the peace. Appeal from the County Court of Du Page county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the April term, 1908. Reversed and remanded. Opinion filed August 10, 1908.

BOTSFORD, WAYNE & BOTSFORD, for appellant.

CHARLES W. HADLEY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellee instituted suit against appellant before a justice of the peace of DuPage county to recover the price received by appellant from the sale of chickens, and obtained a judgment. Appellant appealed the case to the County Court of said county where a trial was had, resulting in a verdict for appellee for $29.65. A motion for a new trial was denied. Judgment was entered on the verdict, and appellant prosecutes this further appeal.

Rufus Mohler, appellee's husband, was a tenant on a farm owned by one Dalton near Wheaton, Illinois. Dalton resided at Indianapolis, and appellant was his agent and attorney at Wheaton. Mohler got in arrears on his rent and had mortgaged his chattel property to some one else. Dalton came to Wheaton and insisted his rent should be paid. Dalton, Mohler and appellant had several interviews. On Mohler's suggestion, it was arranged that he should advertise his chattel property on the farm for sale, and that appellant should attend the sale, act as clerk, receive the money, pay the chattel mortgage indebtedness, and apply the balance of the proceeds of the sale on the rent and other obligations of Mohler, which appellant represented. Mohler advertised the sale by posting sale bills signed Rufus Mohler, describing the property on the farm, including the poultry. Mohler requested that the sale be held in his own name because some of his Dunkard friends would be there, and he did not want them to know that he was obliged to sell out. Some of the chickens were sold and paid for, and the money received by appellant. With the money received from the sale, appellant paid the chattel mortgage indebtedness, surrendered the notes and mortgage to Mohler,

and applied the balance on the rent and on Mohler's other obligations. Mohler was to receive any money paid in after the sale and turn it over to appellant. Two or three days after the sale Mohler came to appellant's office, paid him some money collected after the sale, received his notes and mortgage and stated he would bring in the rest of the money as soon as he collected it. He never paid appellant any more money. A week or two after the sale, and after appellant had paid out all the money received from it, which was insufficient to pay the rent and Mohler's other obligations in appellant's hands, appellee came to appellant, made a claim of ownership of the chickens sold and demanded the money received for them, which appellant refused to pay her. Appellee admitted she read the sale bills and that the poultry she claimed was mentioned therein, and that the bills were signed by her husband, and that she supposed the word "owner" was written under his name; and that appellant was clerk of the sale, received and carried away all the proceeds, and that appellant made the settlements with the purchasers, and that she made no inquiry of appellant who bought, or how much the chickens sold for, and that she was present at the sale, and heard the auctioneer state she wanted a choice of a dozen and a half chickens out of the flock.

Appellee bases her contention that appellant had notice that she owned the chickens upon a conversation had at dinner on the day of the sale. It appears that after the sale was partly completed and before the chickens were sold, dinner was served in a room about 12x14 feet, and twelve or fifteen men sat at the table. Five or six women were about the room and other persons were coming and going in the room. Appellant sat at one end of the table and the auctioneer at the other. Just as they rose from the table the auctioneer said, "Now we will sell the chickens." Mohler said, "I have nothing to do with the chickens, they belong to the woman." Appellee said she had not

decided whether she would sell them that day or not; she thought she might get more on the market. To that, three men replied, "No, you will get more to-day." She said "Let them go." No witness testified that appellant heard the conversation between the auctioneer, appellee and the other persons. A witness did testify that appellant was in the room. Some of the witnesses testified there was not much conversation going on, others that there was conversation all over the room. Appellant testified he did not hear the conversation. His brother, who sat next to him at the table, testified that he did not hear it. With appellant sitting at one end of the table, and appellee and parties engaged in conversation at the opposite end, with a number of people between, a general conversation going on in the room, and with people moving about and in and out of the room, appellant may not, as he says, have heard appellee's talk relative to the chickens. In fact, counsel for appellee admits in his argument that there is no positive proof the appellant heard the conversation. Moreover, in support of appellant's claim that he did not hear appellee talk about her ownership of the chickens, Mohler, as they were getting up from the table came to appellant, and said, "My wife would like to reserve a dozen chickens from the sale, if you are willing." Appellant said "All right." Mohler then said, "Come to think of it, she would like to reserve a dozen and a half, if you are willing," to which appellant consented. This was not calculated to charge appellant with notice that the chickens were the property of appellee, but tended more to confirm his belief that they were subject to sale for the payment of her husband's debts, as previously arranged.

The auctioneer stated when he sold the chickens that Mrs. Mohler would be permitted to select a dozen or a dozen and a half of chickens from the flock. Whether it was a dozen or a dozen and a half no witness states positively.

We do not think this evidence warranted a verdict

for appellee even if she owned the chickens, which is exceedingly doubtful for lack of evidence on that subject, for the reason she allowed her husband to advertise them for sale, and stood by and saw them sold, without giving notice that she owned them. She knew appellant received the money, and let him carry it away without telling him the chickens were hers, and allowed appellant to pay it on her husband's debts before she claimed it as her own.

In Anderson v. Armstead, 69 Ill. 452, the court said: "The law is familiar, that where the owner of property holds out another, or allows him to appear, as the owner of, or having full power of disposition over the property, and innocent parties are thus led into dealing with such apparent owner, or person having the apparent power of disposition, they will be protected. Their rights, in such cases, do not depend upon the actual title or authority of the party with whom they have directly dealt, but they are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power he caused or allowed to appear to be vested in the party upon the faith of whose title, or power, they dealt." Higgins v. Ferguson, 14 Ill. 268; Donaldson v. Holmes, 23 id. 83; Schwartz v. Saunders, 46 id. 18.

In Springer v. Kroeschell, 161 Ill. 368, though the question under consideration was not personal property, the court states the general proposition as follows: "Where the owner of property allows another to appear as the owner thereof, and innocent persons are thus led into dealing with such apparent owner, they will be protected. By such act a real owner is precluded from disputing, as against them, the existence of the title which he suffered to be vested in the party dealing with them." This authority was followed and approved in Bastrup v. Prendergast, 179 Ill. 553; Bank of Montreal v. Dewar, 6 Ill. App. 294; and in Prendergast v. McNally, 76 Ill. App. 335.

We are therefore of the opinion that, under the evidence as it appears in this record, it is clear that appellee is estopped from maintaining the present judgment.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*